(17 Misc. Rep. 461)

### JENCKS et al. v. MILLER et al.

(Supreme Court, Special Term, Westchester County. June, 1896.)

1. NAVIGABLE WATERS—RIGHT TO CONSTRUCT PIERS.

Under the provision of the federal constitution giving congress power "to regulate commerce," the jurisdiction of the United States over navigable waters is paramount to the title of the state to the land under the water, and therefore the ownership of such land does not include the right to erect a structure which interferes with navigation.

2. PUBLIC NUISANCE—WHO MAY ENJOIN.

Where plaintiffs cannot land their boat at their pier without running her bow in front of defendant's adjoining pier, the extension of defendant's pier would be a special injury to plaintiffs, and therefore may be enjoined by them.

Action by Joseph Jencks and another against John J. Miller and another for an injunction. Judgment for plaintiffs.

On July 1, 1874, plaintiffs' grantors obtained from the commissioners of the land office of the state of New York a grant of certain lands under water at Sing Sing, N. Y. The grant was upon the express condition that within five years from the date thereof the grantees appropriate and apply the premises thereby granted to the purposes of commerce, by erecting a dock or docks thereon, and filling in the same; otherwise the grant should cease, determine, and become void. The north line of said grant ran from a given point on the shore 400 feet out into the waters of the Hudson river. The grantees named in said grant built a pier on the land under water thereby conveyed within five years from the date of such grant. The said pier, however, did not extend out into said river the full length of said grant, to wit, 400 feet, but only 319.10 feet along the north line of said grant. On August 24, 1878, the grantees conveyed the pier which they had erected under said grant to the plaintiffs. The deed did not convey all the land which had been granted by the state, but only so much thereof as was covered by the pier itself, to wit, 319.10 out of 400 feet on the north line of the grant, and in addition thereto some of the land on the shore immediately in front of the pier. This deed also gave the plaintiffs the right to use the water, 30 feet in width, on the south side of said dock, for the laying up of vessels, and the loading and unloading of the same, and also all water rights in front of said dock. About the year 1880 the defendants' grantors built out into the Hudson river, at said place, a pier of about the same dimensions as plaintiffs' pier, and extending out into the river no further than did plaintiffs' pier. Defendants' pier is north of plaintiffs' pier, and the slip between the two is some 36 feet in width. Plaintiffs' pier is 60.8 feet wide at the outer end, and defendants' pier is of about the same width. On August 25, 1893, some 13 years after defendants' grantors had erected their present pier, they also obtained from the commissioners of land office of the state of New York a grant of land under water, covering that portion which is covered by their pier. This grant was for the "beneficial enjoyment" of the same; and the land conveyed thereby on the south side adjoined plaintiffs' grant on the north, and also extended at that point, or along that side, 400 feet out into the river, commencing at the same point at which plaintiffs' grant commenced. The plaintiffs are engaged as common carriers of passengers and freight, running the steamboat Sarah A. Jencks, a vessel some 140 feet in length, between Sing Sing and New York City; and they and their common ancestor have been engaged in that business for over 40 years, using their present dock at Sing Sing ever since it was built, and also using the one which was there prior to the erection of the present one. The pier of the plaintiffs is also situated at the foot of a public street. Some 50 or 60 feet north of the north line of defendants' pier there empties a stream of water into the Hudson river from the east, known as the "Kill Brook"; and at times this brook washes down earth and sediment which rest at the defendants' dock and shoal the water

on the different sides of said pier, although the defendants, who are engaged in the ccal business, only use the slip on the south side of their pier for the unloading of vessels having coal consigned to them. The defendants at the time of the trial were the lessees of their pier, but held the premises under a contract to purchase the same from the owners thereof. Defendants proposed to erect a breakwater, piling, or cribwork of piling, running out some 40 feet from the end of their pier into the water of the Hudson river, which structure would be little narrower than the pier itself. The avowed purpose of this structure was to prevent the infiltration of sediment around said pier, and thus the shoaling up, more particularly, of the lower side thereof. Plaintiffs claimed that at times, at least, it was impossible to land their boat at their pier without running the bow of their vessel frequently as much as 50 feet beyond or in front of defendants' pier, and allege that, if the obstruction the defendants proposed to build were erected, it would prevent the landing of plaintiffs' boat at their own pier, by cutting off their right of ingress and egress, and would thus destroy plaintiffs' beneficial use and right of their own pier, and also of their right in and to the beneficial use of the waters surrounding said pier, by cutting off their access to said pier. A preliminary injunction restraining the erection of said breakwater or piling was granted, which was continued by consent pending the trial.

Hyland & Zabriskie, for plaintiffs.
Smith Lent, for defendants.

DYKMAN, J. By the common law of England the title to land under navigable waters was vested in the king as the embodiment of sovereign power, and upon the separation from the mother country at the time of the American Revolution the people succeeded to the prerogative rights of the crown, and became vested with the title to the beds of navigable waters, upon the theory that the people are the successors to the sovereignty of the king. By virtue of this underlying principle the title to the land under the waters of the Hudson river became vested in the people of the state of New York upon the organization of the state government, in 1777. Such title continued unlimited and unrestricted until July, 1788, when the state adopted the constitution of the United States, which contained this provision: "Congress shall have power  *  *  *  to regulate commerce with foreign nations, and among the several states and with the Indian tribes." The term "commerce," as employed in that instrument, embraced navigation; and so congress became vested with the exclusive right to regulate commerce, navigation, etc. Gibbons v. Ogden, 9 Wheat. 189. Then the condition was this: The people of the state continued to own the land under the waters of the Hudson river, and congress possessed the power to regulate the commerce and navigation thereon. The state could not authorize any impediment to the navigation of the river, nor authorize an impairment or diminution of the rights of the public therein. The state could make grants of land under the waters of the river bed, but they were, and are at all times, subject and subordinate to the paramount right of congress to regulate the use of the water flowing over the granted land. Wharves and docks are essential to the facilitation of commerce, and they may be constructed by riparian proprietors and grantees of land under water; but, if they be so constructed as to impede navigation, the paramount rights of the public are invaded, and a nuisance is

created, which may be enjoined by the courts, at the suit of any person who sustains special injury thereby. Dutton v. Strong, 1 Black, 23. The power and authority of congress to regulate the construction of wharves and piers in navigable waters lay inert and unexerted until September, 1890, when a law was enacted which, among other things, provided:

"That it shall not be lawful to build any wharf, pier," etc., "or structure of any kind * * * in any navigable waters of the United States * * * without the permission of the secretary of war, in any port, roadstead, haven, navigable water or other waters of the United States, in such manner as shall obstruct or impair navigation commerce or anchorage of said waters." Section 7.

Section 10 of that act provides:

"That the creation of any obstruction not affirmatively authorized by law to the navigable capacity of any waters in respect of which the United States has jurisdiction is hereby prohibited."

The light afforded by the foregoing principles will aid in the examination and solution of the important questions involved in this action. The plaintiffs and the defendants are both owners of a dock at Sing Sing, and their docks both extend into the Hudson river an equal distance. The dock of the plaintiffs is south of that of the defendants, and there is a slip between them. Each of the parties has a grant from the state of New York of the land under the waters of the river which extends westerly beyond the end of their docks, which are both built upon the land so granted. There is a stream of water, called the "Kill Brook," which comes in from the east, and empties into the Hudson river immediately north of the defendants' dock. At times that brook washes down earth and sediment which rest at the defendants' dock, and shoal the water. For the purpose of arresting that sediment, the defendants desire to prolong their dock by the construction of a crib upon the westerly end thereof, and it is to restrain the building of that structure that this action was commenced. The plaintiffs are the owners of a steamboat which they run between Sing Sing and New York for the transportation of freight and passengers. In bringing their boat to their own dock on her return trip from New York, it is generally necessary to run her bow in front of the defendants' dock, as the slip between them is only 36 feet wide. It would be very difficult at all times, and impossible many times, to bring the plaintiffs' boat to her dock without running her bow about 50 feet in front of the dock of the defendants. It is therefore manifest that the plaintiffs will be especially injured by the extension of the defendants' dock further into the river. The Hudson river is one of the navigable streams of the United States, and congress has the paramount right to control its use, under the commercial clause of the constitution. In the absence of harbor lines, and of rules to regulate the construction of wharves, the defendants, as riparian proprietors, could erect a dock; but such right terminated at the point of navigability, and if they extend the structure beyond that line, so as to obstruct the navigation of the river, then they create a public nuisance. As the plaintiffs will be

especially injured by the crib which the defendants propose to construct, they may restrain its construction. Dutton v. Strong, 1 Black, 23. The waters in front of the defendants' dock are public waters, and the plaintiffs have the right, in common with all others, to cross them in the ordinary course of navigation, and especially for the purpose of bringing their boat to their own dock. That right will be defeated if the defendants are permitted to construct their crib. The defendants claim the right to erect the crib in front of their dock, by virtue of their ownership of the adjacent upland, and of the land under water in point where they propose to place it. In fact, they stand alone upon those rights. We have seen already, however, that their rights as such owners are much restricted and limited by the paramount rights of the public to use the waters of the river, and no elaboration of that limitation is necessary. Moreover, the construction of this crib is prohibited by the act of congress to which allusion has already been made, and, as that legislation is paramount and controlling, it seems unnecessary to pursue the subject further.

The plaintiffs must have judgment for the relief demanded in the complaint, with costs, but no additional allowance.

