Robert W. De Forest, Appellant, *v.* Samuel A. Walters and The Board of Trustees of the Town of Huntington, Respondents.

1. Ejectment — Determination of Equitable Issues by Court on Consent — Setting Aside Inconsistent Verdict — Provision as to New Trial. Where, upon the trial of an action of ejectment, after the denial of a motion by plaintiff for a general verdict in his favor, he requests the submission to the jury of a particular question only, at the same time asking, with the concurrence of the defendant, that all other issues, being equitable, be reserved for decision by the court, and the request is granted and the jury renders a verdict in plaintiff's favor, the granting of an order setting aside such verdict as against evidence and refusing a new trial unless the judgment rendered shall be set aside on appeal or otherwise is permissible when the court, upon determining the issues reserved, renders a decision in favor of the defendant on findings inconsistent with the verdict.

2. Defenses to Ejectment — Removal of Cloud on Title — Statute of Limitations. An action of ejectment based upon a deed which is the result of a mistake, is subject to a defense either to correct the deed, or, when the invalidity of the deed does not appear upon its face, to set it aside as a cloud upon title so far as it relates to land not sold or intended to be included in the description; and the latter defense, when set up as a counterclaim by appropriate allegations, is continuous so long as the occasion remains for the exercise of the power of a court of equity to remove the cloud, and, hence, is not affected by the Statute of Limitations.

3. Reformation of Plaintiff's Deed — Statute of Limitations. Where, in an action of·ejectment, the plaintiff attempts to assert title through a deed alleged by the defendant to be inoperative by reason of a mistake in describing the land conveyed, and the latter sets up this fact as a defense and as the basis of a demand for the reformation of the defective deed, and it does not appear when the defendant first learned of the alleged mistake, the Statute of Limitations has no application to such defense.

4. Denial of Landlord's Title by Tenant. The rule that estops the tenant from denying the landlord's title does not apply to the defendant in an action of ejectment who went into possession under a lease from the plaintiff's predecessor, supposing that the latter owned the demised premises and had the right to lease, but on subsequently ascertaining that such was not the fact, abandoned that possession and attorned to the true owner.

5. Reformation of Plaintiff's Deed. Where the description in the deed relied upon by the plaintiff in ejectment, unaided by extraneous

proof, gives color to his claim to the *locus in quo*, whether the deed actually covers it or not, equity has jurisdiction to quiet the title by a reformation of the deed in accordance with the facts, in the ejectment action.

*De Forest* v. *Bd. Trustees of Huntington,* 78 Hun, 611, affirmed.

(Argued May 4, 1897; decided June 8, 1897.)

APPEAL from a judgment of the General Term of the Supreme Court in the second judicial department, entered June 19, 1894, which affirmed a judgment in favor of the defendants entered upon a decision of the court on trial at Circuit without a jury, and also affirmed an order setting aside a verdict previously rendered in favor of the plaintiff.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Austen G. Fox* and *Thomas Young* for appellant. All the issues of fact in this action were triable by the jury as matter of legal right, and, after a general verdict in favor of the plaintiff, the judge, at Circuit, had no power to make findings of fact contrary to the general verdict and enter judgment on the findings in favor of the defendants. (Sedgw. & Wait on Titles [2d ed.], §§ 488, 496; Code Civ. Pro. §§ 698, 970, 971; *N. Y. L. Ins. & T. Co.* v. *Mayor,* 6 N. Y. S. R. 656; *Webster* v. *Bond,* 9 Hun, 437; *Chapman* v. *Forbes,* 123 N. Y. 532; *Clark* v. *Mosher,* 5 N. Y. S. R. 84; *Parker* v. *Laney,* 58 N. Y. 469; *Mellen* v. *Mellen,* 27 Abb. [N. C.] 99; *Fasnacht* v. *Stehn,* 53 Barb. 650; *Sturm* v. *A. M. Ins. Co.,* 6 J. & S. 281; 63 N. Y. 77; *Hoppough* v. *Struble,* 60 N. Y. 430.) After the plaintiff had moved generally for the direction of a verdict in his favor and the defendants had asked leave to go to the jury on an affirmative defense, and the jury had rendered a general verdict for the plaintiff, the defendants had no right to an order setting aside the verdict as contrary to the evidence. (7 Lawson's Rights & Remedies, § 3712; *Barrett* v. *T. A. R. R. Co.,* 45 N. Y. 628, 631; *Rowe* v. *Stevens,* 44 How. Pr. 10; *Flynn* v. *M. B. Assn.,* 152 Mass. 288; *Layman* v. *Anderson & Co.,* 4

App. Div. 124; *Cothran* v. *Collins*, 29 How. Pr. 155, 170; *Beckwith* v. *N. Y. C. R. R. Co.*, 64 Barb. 299.) Even if the court had the power to set aside the verdict, yet the court erred in holding that the defense of mutual mistake was not barred by the Statute of Limitations. (*Oakes* v. *Howell*, 27 How. Pr. 145; *Cramer* v. *Benton*, 60 Barb. 216; 56 N. Y. 638; *Hoyt* v. *Putnam*, 39 Hun, 402; *Bosley* v. *N. M. Co.*, 123 N. Y. 550; *Exkorn* v. *Exkorn*, 1 App. Div. 124; Wood on Limitations [2d ed.], 140.) The court erred in disposing of plaintiff's plea of the Statute of Limitations as if the defendants' alleged cause of action were for the removal of a cloud upon title, instead of for the reformation of a deed. (*Day* v. *Town of New Lots*, 107 N. Y. 148; *Stevens* v. *Mayor, etc.*, 84 N. Y. 296; *Wright* v. *Delafield*, 25 N. Y. 266; *Truesdell* v. *Sarles*, 104 N. Y. 164; *Romeyn* v. *Sickles*, 108 N. Y. 650; *Vail* v. *L. I. R. R. Co.*, 106 N. Y. 286; *Chase* v. *McLean*, 130 N. Y. 537; *Moores* v. *Townshend*, 102 N. Y. 387; Pom. Eq. Jur. § 1398; 1 Wait's Act. & Def. 666; *Bockes* v. *Lansing*, 74 N. Y. 437.) Even treating the defendants' cause of action as one to remove a cloud upon title, it does not allege facts sufficient to maintain it. (*Moores* v. *Townshend*, 102 N. Y. 387; 1 Wait's Act. & Def. 666; Code of Civ. Pro. § 388.) The cause of action for reformation alleged in the answer is not available in this suit. The proper parties are not before the court. (*Cramer* v. *Benton*, 60 Barb. 216; 56 N. Y. 638; *Webster* v. *Bond*, 9 Hun, 437; *Chapman* v. *Forbes*, 123 N. Y. 532.) It is not necessary for this court to order a new trial, nor would such a course be proper, but all proceedings after the rendering of the verdict should be set aside, the judgment for the defendants reversed and the plaintiff be allowed to enter judgment on the verdict. (*Parker* v. *Laney*, 58 N. Y. 469; *Marquat* v. *Marquat*, 12 N. Y. 336.) If the court had the power to set aside the verdict, it was most obvious error to render final judgment, because it was not clear that upon a new trial the plaintiff could not possibly recover. (*Iselin* v. *Starin*, 144 N. Y. 453; *Ehrichs* v. *De Mill*, 75 N. Y. 370, 374; *Thomas*

v. *N. Y. L. Ins. Co.*, 99 N. Y. 250 ; *Griffin* v. *Marquadt*, 17 N: Y. 28, 34.)

*N. S. Ackerly* for respondents. The new trial granted by the trial court, to be had in case the judgment was reversed on the other questions, and affirmed by the General Term, is not open for review in this court. (Code Civ. Pro. § 1337; *Fallon* v. *B. C., H. P. & P. P. R. R. Co.*, 56 N. Y. 652; *Young* v. *Davis*, 30 N. Y. 134; *Folger* v. *Fitzhugh*, 41 N. Y. 228; *Hoes* v. *E. G. El. Co.*, 150 N. Y. 87; *Nostrand* v. *Knight*, 123 N. Y. 614; *A. C. S. Bank* v. *McCarty*, 149 N. Y. 71; *Stilwell* v. *M. L. Ins. Co.*, 72 N. Y. 385.) The deed was void so far as it included any lands not offered and sold at public auction, for want of power in the officer executing it. He could only execute a legal deed for such lands as had been authorized to be conveyed by the board. (*Trustees, etc., v. Bowman*, 136 N. Y. 521.) Assuming, as the trial judge held, that the premises were included in the deed from the board of trustees to De Forest, still the defendants were the legal owners ; they were in possession with an equitable right to retain such possession and whether the defendants are entitled to equitable affirmative relief or not, the plaintiff cannot succeed in the action. (*Hoppough* v. *Struble*, 60 N. Y. 430.) The defendants were entitled to the affirmative relief given them by the judgment in this action. (*Bush* v. *Hicks*, 60 N. Y. 298.) The Statute of Limitations did not bar the right to the affirmative relief. (*Reitz* v. *Reitz*, 80 N. Y. 538; *Bartlett* v. *Judd*, 21 N. Y. 200; *Smith* v. *Reid*, 134 N. Y. 568; *Miner* v. *Beekman*, 50 N. Y. 337; *Schoener* v. *Lissauer*, 107 N. Y. 111.)

O'Brien, J. This was an action of ejectment, in which the plaintiff demanded judgment for the recovery of the possession of a parcel of land, or land under water, described in the complaint as a parcel seventy by one hundred feet, situated at Cold Spring Harbor, in the town of Huntington, Suffolk county. The defendant Walters, who was in possession, was

the sole original defendant, and in his answer, after admitting that he was in possession, denied all the other allegations of the complaint.  He further alleged that he was in possession under a written lease to him by the town of Huntington, the real owner of the parcel.

Subsequently, by an order of the court, the town was made a party defendant and permitted to answer the complaint.  In its answer, after admitting the possession of Walters, it denied all the other allegations of the complaint.  As an affirmative defense, by way of counterclaim, it also pleaded that the plaintiff claimed title and the right to the possession under and by virtue of a deed from the town to the plaintiff's ancestor, executed November 19, 1870, and that by mistake on the part of the grantor in the deed, and fraud on the part of the grantee, the lands intended to be conveyed were so described as to make it appear that the conveyance embraced the land in controversy.

It prayed that the complaint be dismissed under the other defenses, and under the counterclaim that the deed be reformed so that the description should plainly embrace only the lands actually sold to the grantee and intended to be conveyed, which were described in general terms in the answer.

The plaintiff replied to the counterclaim and denied the allegations of fact contained therein, and to the claim for a reformation of the deed pleaded the ten years' Statute of Limitations.

The issues thus framed were brought to trial before a jury. The plaintiff produced the deed and gave some evidence tending to show that the description of the land conveyed thereby embraced the land in controversy and tending to prove the execution of the instrument by the president of the board of trustees of the town by the direction and with the consent of the board.

The proof on the part of the defendants took a wide range. For all the purposes of this appeal it is sufficient to state that the testimony tended to show that, prior to the execution and delivery of the deed from the town to plaintiff's ancestor, in

30

1870, a new road had been constructed across what is called a cove, which left on the south of the road a small piece of land, or land under water, belonging to the town between the road and the property of the grantee in the deed. That he made application to the trustees having charge of the property of the town for the purchase of this parcel, and they resolved to sell the same at auction, bounding it so as to include the new road, and making the grant subject to the public easement. The sale was held, and the parcel intended to be sold was pointed out by the trustees to the bidders who were present, but it does not appear that any survey or accurate description of it was ever made. Henry G. De Forest, under whom the plaintiff claims, was the highest bidder, and it was struck off to him for $242.50. It is somewhat difficult to describe the piece of land sold according to the testimony of the defense. Some of the witnesses call it a "hole," and others describe it in general terms as the part of a cove cut off by the new road. It is quite manifest, however, that upon the defendants' theory the area intended to be included in the grant was of small extent, not to exceed an acre in all. The deed was drawn by an attorney who was not present at the sale, and who, it is said, was not familiar with the premises sold. Some of the witnesses claim that the words of the description are susceptible of a construction that would embrace some thirty-seven acres, extending to the county line and including the land in controversy, and this construction was adopted by the learned trial judge. Upon an examination of the testimony, in connection with the maps contained in the record, it appears to us that the learned judge gave to the words of the description a construction far too favorable to the plaintiff, and, if the question was an original one within our jurisdiction, we would be inclined to hold that the deed, properly construed, does not embrace any such extensive grant nor the premises in question.

It is quite certain that at the auction sale the town authorities attempted to inform the bidders present with respect to the premises intended to be sold. While nothing seems to

have been then reduced to writing, yet the subject of the sale was pointed out, so that the boundaries could be identified by the eye. No one claims that the land in controversy was pointed out as any part of the contemplated grant, and from the nature of the transaction and the consideration paid it would seem to be quite improbable that the deed was ever intended to embrace, or that it does in fact embrace, any such extensive tract as is said to be covered by the words of the description.

There is plainly a mistake, either in the construction put upon the words of the description or in their use by the person who drew the deed. But it was a mistake in favor of the plaintiff, and, of course, he cannot, and does not, complain of it.

The argument upon this appeal has largely been directed to certain complications arising out of the peculiar and exceptional practice adopted at the close of the trial, and for which, so far as we can see, the plaintiff's attorney is alone responsible. There can be no doubt that the plaintiff was entitled to have the whole case, and every question of fact arising upon the evidence, submitted to the jury, but his counsel elected to take a different course, which resulted in embarrassing the case with questions which otherwise could not arise. One of the questions embraced within the issues, and controverted at the trial, was the authority of the president of the board of trustees to execute a deed or the deed in question.

The plaintiff moved for the direction of a verdict in his favor on the ground that there was no evidence of the want of such authority, and that it was no defense even if there was, since there was no proof that the grantee knew the fact, the deed on its face appearing to be regular and well executed.

This motion having been denied, the plaintiff's attorney then requested that only the question of authority in the president to execute the deed be submitted to the jury, and that the issues raised by the affirmative defenses, or counterclaim, being equitable in their nature, should be determined by the court, and judgment upon such issues be given in favor of the

plaintiff, for the reason that they were barred by the Statute of Limitations. The defendants' counsel made no objection to this request, and the court decided to submit to the jury only the question of authority, reserving the other issues for his own determination upon all the evidence.

The jury found for the plaintiff upon the issue so submitted, and the defendants' counsel made a motion to set aside the verdict, which was reserved by the court for further consideration. Subsequently the court rendered its decision upon the issues involved in the affirmative defense and counterclaim, and found the facts with respect to the auction sale of the small piece of land as hereinbefore stated and as alleged by the town in its answer, the purchase thereof by plaintiff's ancestor, and that a deed was executed and delivered in pursuance of such sale, but, by mutual mistake in the description, it was made to embrace lands not intended to be sold and not sold, including the land in controversy, and, further, that the grantee in the deed went into possession of the small piece sold and intended to be sold, and that only, and that the town remained and continued in possession of all the other lands embraced in the deed, and was so in possession at the time of the commencement of the action.

As matter of law the court found that the deed of November 19, 1870, should be reformed, so as to embrace in its description only the lands lying north or northeast of the southwest line of the new street or road as laid out; that the relief was not barred by the Statute of Limitations, and directed judgment for the defendants accordingly, dismissing the plaintiff's complaint.

With this decision an order was filed deciding the pending motion to set aside the verdict. The court set it aside as against the evidence, and, after reciting that the other issues in the case had been found by the court in favor of the defendants, it stated that a new trial was not ordered unless the decision of the court on all the other issues in the case was set aside on appeal or otherwise, in which event a new trial on the issue submitted to the jury was awarded.

On this decision a general judgment was entered for the defendants, reforming the deed and dismissing the complaint, with costs. The learned trial judge, in his opinion rendered upon the final decision, expressed great doubt as to the correctness of his ruling at the trial, in which he gave interpretation to the descriptive words in the deed as embracing lands other than the small piece pointed out at the auction sale. This doubt, as it seems to us, was well founded; but since the error in that regard, if any, was in favor of the plaintiff, it is not now material, and the province of this court is limited to a review of the case as we find it.

The procedure adopted at the trial, resulting in the judgment, was unusual, but we think that there was no such departure from established practice as to constitute an error of law, or a mistrial, or even serious irregularity. It is possible to give to the verdict a scope and meaning that was not intended when the question was submitted to the jury, and, we think, the learned counsel for the plaintiff has attempted to give to it in his argument in this court an interpretation not anticipated or intended by either party at the trial. This meaning is based largely upon the language of the learned judge in his charge, which was much broader in scope than the requests which the plaintiff made and the court granted.

It is now insisted that the verdict is to be understood and treated as a finding by the jury, not merely that the president had the authority to execute a deed of the land intended to be sold, but that he was empowered by the trustees to execute the identical deed in controversy, embracing the thirty-seven acres. Of course, if that is the effect of the verdict, it decided the whole controversy, since there could not very well be a mistake in the description if the trustees directed the president to execute the deed as it now appears, assuming that it embraces the larger tract of land and that they knew that fact.

If the question submitted to the jury contemplated an inquiry and finding, not simply with respect to the authority of the president to sign any deed, but with respect to his

authority to execute the deed actually made, then the submission necessarily involved the question of mistake and there was nothing left for the court to try. But it is manifest that such is not the fair interpretation of the verdict. The plaintiff's request embraced in the submission only the bare question of authority, and what makes the point still clearer is the fact that the defendants' counsel then requested that he be permitted to go to the jury upon the question whether there was authority to execute any deed embracing the land in controversy, and as to what lands were covered by the deed given, and these requests were refused. So we think it clear that what was submitted to the jury was not any question of mistake, but simply the question with respect to the power of the officer who executed the deed to bind the town by such an instrument, and notwithstanding the terms of the charge, the verdict, in its scope and effect, must be limited to a finding upon the precise question intended to be submitted.

Thus understood, the finding was amply warranted by the evidence, while if given the broader construction there was no proof to justify a finding that there was authority to execute any deed embracing any lands save the parcel pointed out at the auction sale. What the plaintiff requested was a special finding by the jury, upon a particular question, as to the authority of the president from the board of trustees to bind the town by a deed, and the verdict imports that he had such authority, not that he was empowered to convey the land in controversy.

But whatever meaning it may be possible to give to the verdict, it is clear that the court retained full power over it, and equally clear that he was empowered by the consent of the parties to determine the question of mistake, embraced in the affirmative defenses, without the intervention of the jury. This issue embraced the whole question of title to the land in controversy, and any other lands covered by the description in the deed, save only that pointed out at the auction sale. The court determined this issue in favor of the defendants, and made findings accordingly. There was then a manifest

conflict between the findings of the court and that of the jury, if the verdict meant what the plaintiff now claims for it, and especially so in view of the construction which the court had so far given to the description of the lands contained in the deed. The court had the power to effectuate its own decision of the questions submitted to it by the parties, and, therefore, properly set the verdict aside as the result of mistake on the part of the jury, and, possibly, of the court as well. The verdict was supposed to be an obstacle in the way of any judgment upon the findings of the court covering all the questions in controversy. As interpreted it was so in conflict with the decision of the court that either the one or the other must yield, since both could not stand together, and we cannot doubt that the learned trial judge took the proper course for the solution of the difficulty.

Nor was there any error in the disposition of the motion to set aside the verdict in regard to the granting of a new trial. So long as the decision and findings of the court stood in the case the plaintiff was not entitled to a new trial. It would be of no possible use to him since the court had decided the whole question of title against him, and until that decision had been set aside upon appeal or otherwise, there could be no new trial before a jury. The counsel had waived that right upon the submission of the case, and it could not be revived under the circumstances unconditionally. The court provided in the order setting the verdict aside that a new trial should be granted in the event of the decision and findings on the counterclaim being set aside on appeal or otherwise. This secured to the plaintiff every legal and constitutional right to which he was entitled.

We do not think that any relief to which the defendants were entitled upon the facts alleged in the counterclaim was barred by the Statute of Limitations. The deed was made in November, 1870, and this action commenced in March, 1892. There was no point made at the trial as to the form of the pleadings, nor any question raised by demurrer or otherwise with respect to the sufficiency of the counterclaim as a basis

of the relief demanded, save the lapse of time. For every purpose of the trial and the application of the proper relief, a counterclaim in the answer is a complaint, the defendant is deemed to be the plaintiff and the plaintiff deemed to be the defendant. (Code, §§ 720, 974.)

The learned trial court treated the counterclaim as a complaint to remove a cloud upon title and containing all the elements necessary to warrant that form of relief. The learned counsel for the plaintiff suggests that it contains no allegation of possession in the town, and that such an allegation is necessary in order to justify relief of that character. The answer states in substance that the town was in possession through its tenant, and the court has found the fact of such possession in the defendants. We would not be warranted in disturbing the judgment upon some technical ground not urged at the trial, and when a party brings ejectment, based upon a deed which is the result of mistake, we can see no objection upon principle to a defense, either to correct the deed or to set it aside as a cloud upon title, so far as it relates to land not sold or intended to be included in the description. The invalidity of the plaintiff's deed did not appear upon its face. Such a cause of action is continuous so long as the occasion remains for the exercise of the power of a court of equity to remove the cloud upon the title. (*Smith* v. *Reid,* 134 N. Y. 568; *Miner* v. *Beekman,* 50 N. Y. 337; *Schoener* v. *Lissauer,* 107 N. Y. 111.) So that if the counterclaim was properly held to allege all the facts necessary in a bill to remove a cloud upon title, and we think it was, or, at least, it is now too late to assail the pleading on such ground, then the relief awarded in the final judgment was not barred by the statute.

Moreover, there is, we think, another answer to the plaintiff's contention that the statute had run against the right of the defendants to the relief demanded in the counterclaim. The plaintiff is attempting to assert title through a deed which it is alleged by the defendants is inoperative by reason of a mistake in describing the land conveyed. The defendants set

up these facts as a defense and as a basis for reforming the defective deed. The plaintiff's action of ejectment furnishes the occasion for the interposition of these claims by the defendants. In such an action, and under such circumstances, it has been held that the Statute of Limitations, if applicable at all, does not begin to run till the party against whom it is invoked is charged with knowledge of an assertion of some adverse claim under the deed. There is nothing in the record to show' when the plaintiff first asserted a claim under the deed to the knowledge of the defendants, or when the latter first learned of the alleged mistake, or of the claim that the description covered the larger tract of land, and, hence, there was no basis furnished by the plaintiff for the application of the Statute of Limitations to the case. (*Bartlett* v. *Judd*, 21 N. Y. 200; *Reitz* v. *Reitz*, 80 N. Y. 538; *Sprague* v. *Cochran*, 144 N. Y. 104.)

The plaintiff has pleaded the defense, and in order to make it available was bound to prove something more than the mere lapse of time. Where, as in this case, the description is so ambiguous that the deed, upon its face, does not necessarily include any land save that intended to be conveyed, a cause of action does not accrue to the grantor to reform the deed, or to change the description, until he has knowledge that the grantee in the deed, or some one claiming under it, is asserting some claim or right not intended to be embraced in the instrument and not apparent from its terms. In this case the town had no right to suppose that the deed embraced any lands but those actually sold until the plaintiff made some adverse claim; and even now, as already observed, it is by no means clear that it embraces anything more than the parcel which he paid for and was intended to be conveyed.

We do not think that the judgment is affected by any supposed violation at the trial of the rule which estops the tenant from denying the landlord's title. There is no finding in the case that raises such a question nor any request to find. No ruling was made or asked at the trial upon any question of that kind. It never had any application to the case except as

between the plaintiff and Walters, the original defendant, and since the town was permitted to come in and defend and assert its title, the original issues between the plaintiff and Walters ceased to be of any practical importance. The judgment would have been the same had he withdrawn his answer. His defense played no part in the controversy. But even after looking into the evidence for the point we fail to perceive that it is or ever could be involved in the case. It appears that from the year 1886 to 1888 Walters held this piece of land under lease from the plaintiff's ancestor, the grantee in the deed, to float an oyster scow at high water and to rest on the bottom at low water, but in the subsequent years he took the lease from the town and was in possession under such lease at the commencement of this action. So that he was not in possession as the plaintiff's tenant or under the plaintiff. The testimony in the case is entirely consistent with the theory that he went into possession under the lease from the plaintiff's predecessor, supposing that he owned the demised premises and had the right to lease, and that subsequently he ascertained that such was not the fact and then abandoned that possession and attorned to the true owner.

The rule that estops the tenant from denying the landlord's title does not apply to such a case, even as between the original parties. (Wood's Landlord & Tenant, § 236.)

But if this were otherwise, the situation at most was a proper subject for consideration upon the motion to permit the town to come in as a party defendant, if that involved any element of discretion. In any event, the town was not, under the circumstances, estopped by any act of Walters. Nothing was decided in favor of Walters, and no relief was awarded him. The real controversy was between the plaintiff and the town, and the judgment should be reviewed here in the same way as if Walters had in fact disappeared from the case, as he did for all practical purposes.

Whether the deed actually covered the *locus in quo* or not, the words of the description, unaided by extraneous proof, gave color to the plaintiff's claim, and he having asserted such

a claim in this action, the jurisdiction of equity to quiet the title by a reformation of the deed in this action cannot be doubted.

On the whole case, we conclude that the judgment is based upon principles of justice, and that, since it is not, in our opinion, open to any valid legal objection, should be affirmed, with costs.

All concur.

Judgment affirmed. _____