(46 Misc. Rep. 317.)

BRENNAN v. THOMPSON et al.

(Supreme Court, Special Term, New York County. February, 1905.)

1. REFORMATION OF DEED—LIMITATIONS.

The statute of limitations is no defense to an action by a grantee in possession of real estate to have his deed reformed to conform to the intent of the parties.

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Limitation of Actions, §§ 175, 195; vol. 42, Cent. Dig. Reformation of Instruments, § 119.]

2. SAME—EVIDENCE.

The description of a deed, by error in transcribing, conveyed six inches of an adjoining owner's land, and six inches of the grantor's land was not conveyed. Every other measurement, except the location of the point of beginning, was identical with the deed from which the description was transcribed. Held, that the grantee in possession was entitled to a reformation of the deed in a suit to quiet title to correct the mistake.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Reformation of Instruments, § 44.]

Action by William Brennan against Mary W. Thompson and others to remove a cloud on title. Judgment for plaintiff as to Thompson and Beaver.

William F. Clare (Paul D. Judge, of counsel), for plaintiff.

George W. Simpson, for defendants Beaver and Thompson.

CLARKE, J. By deed acknowledged November 4, 1842, Don Alonzo Cushman and wife conveyed to John Beaver—

"All that certain lot. * * * distinguished upon a map of the estate at ·Chelsea (late Greenwich) of Clement C. Moore, recorded, * * * and further described as the northwest portion of said lot eighty-eight, containing in front on Twentieth street and the rear twenty feet, and in length on each side ninety-one feet and eleven inches * * * and bounded as follows, viz.: :Southwesterly by the said Twentieth street, northwesterly by the remaining -part of said lot, northeasterly by lot numbered on said map one hundred and ten, now or late belonging to Clement C. Moore, Esq., and southeasterly by lot numbered on said map eighty-seven, late conveyed by Clement C. Moore, Esq., ·to Mary Stewart."

It will be noticed that no distances are given from Eighth avenue; that the lot is 20 feet front, one-half of a lot appearing on a recorded map, and its boundaries are fixed by the lines of adjoining lots on said map. On the 12th of May, 1846, John Beaver and William S. Hunt entered into a party-wall agreement, which recited that Hunt was the owner of a lot conveyed by Cushman and wife March 9, 1846, on which he was erecting a house, and that Beaver was the owner of the lot adjoining the same on the easterly side, -conveyed by said Cushman June 17, 1842, on which said Beaver had ·erected a house, and therefore, for the consideration of $75, Beaver sold and conveyed to Hunt the right to use his west wall as a party wall. On the 30th of December, 1864, John Beaver and wife executed a mortgage to the Bank for Savings to secure the payment of $6,500 on the premises in question, using the same language of description found in the deed of 1842 from Cushman to Beaver. By deed acknowledged January 4, 1869, recorded January 6, 1869, John Beaver and wife conveyed to William Brennan, for $15,000—

"All that certain lot of ground, situate, lying and being in the Sixteenth Ward ·of the City of New York, bounded and described as follows: Beginning at a point on the northerly side of Twentieth street, between the Eighth and Ninth avenues, and distant five hundred feet westerly from the northwest corner of Eighth avenue and Twentieth street; running thence northerly, and parallel with the Eighth avenue, ninety-one feet and eleven inches; thence westerly, and parallel with Twentieth street, twenty feet; thence southerly, parallel with the Eighth avenue, ninety-one feet and eleven inches; thence easterly, along the northerly side of Twentieth street, twenty feet to the place of beginning * * * together with the tenements, &c., subject to a certain mortgage of $6,500."

And Beaver covenanted, for himself, his heirs, etc., that he was lawfully seised in his own right "of a good, absolute and indefeasible estate of inheritance in fee simple of and in all and singular the above granted and described premises, with the appurtenances, and hath good right, full power and lawful authority to grant, bargain, sell and convey the same in manner as aforesaid," and further covenanted that Brennan should "have, hold, use, occupy, possess and enjoy the above granted premises and every part and parcel thereof," and that they were free and clear, discharged and unincumbered from all former and other grants, titles, etc., and also Beaver and his heirs should and would "make, do and execute all and every such further and other lawful and reasonable acts, conveyances and assurances for the better and more effectually vesting and conforming

the premises hereby granted or so intended to be." Under said deed Brennan paid the purchase money and entered into possession, and has ever since continued in said possession. At the time he purchased, the block was built up—the houses in the same position they now occupy. In 1904, wishing to obtain a loan, upon the survey and examination incident thereto it was discovered for the first time that the property, instead of beginning 500 feet—the measurement put for the first time into the description in Beaver's deed to Brennan—from west of Eighth avenue, began 499 feet and 6 inches west of said avenue; the result being that the premises, according to the description in the deed, was 6 inches on the adjacent lot, and that 6 inches on the other side was still apparently vested in Beaver, or, he being dead, in his heirs or devisees—a son and daughter. Of course, it is a perfectly obvious mutual mistake. In some way, in transforming the description in the deed from Cushman to Beaver into the description in the last deed, it got 6 inches out of the way, and 6 inches of an adjoining owner's land was apparently conveyed, and 6 inches of the grantor's land was unconveyed; but every other measurement, except the location of the point of beginning, was and is identical, and the houses were all built as they now are, and no human being connected with the property had any idea that anything was wrong until 1904. Thereupon, under the covenants, the devisees of Beaver were asked to quitclaim to carry out their ancestor's intention. They declined. This is an action to remove that cloud on the title by the owner in possession—not to obtain land, but to clear his title. The complaint, after setting up the facts about which upon the trial there was no dispute, demands 'as relief the reformation of the deed so as to make the description of the point of beginning 499 feet 6 inches instead of 500; second, that defendants be required to specifically perform by conveying the said strip; and, third, for further relief.

The defendants set up and rely upon the 10-year statute of limitations, as found in section 388 of the Code of Civil Procedure, asserting that the statute began to run in 1869, when the deed passed, and cite Exkorn v. Exkorn, 1 App. Div. 124, 37 N. Y. Supp. 68, "that the running of the statute did not depend upon the discovery of the mistake." That was a case to reform a deed by inserting plaintiff's name as a co-grantee with defendant. There was no possession, and there was no question of a cloud on title. It was an attempt to get land, not to clear title. So Campbell v. Culver, 56 App. Div. 595, 67 N. Y. Supp. 469, was an action to recover damages for a breach of contract, and wide of the mark. Perry v. Fries, 90 App. Div. 484, 85 N. Y. Supp. 1064, was an action to reform a discharge of a mortgage after rights of third persons had intervened by purchase and payment, and was based entirely upon plaintiff's own mistake. Crowley v. Johnson, 96 App. Div. 319, 89 N. Y. Supp. 258, was an action for damages for breach of contract. I have examined not only all the cases on defendants' brief, but every case in which Exhorn v. Exhorn has been cited which I could find, and am convinced that no one of them is authority for the proposition that the statute of limitations, in a case like that at bar, commences

to run at the time of the passing of the deed. The true rule is that laid down in Perrior v. Peck, 39 App. Div. 395, 57 N. Y. Supp. 377, affirmed 167 N. Y. 582, 60 N. E. 1118:

"It is insisted by the plaintiff's counsel that defendant is not entitled to a reformation of the conveyance, as more than ten years have elapsed since the conveyance was made. Where a grantee is in possession by virtue of his deed, claiming to own the lands he occupies, I seriously doubt whether the statute of limitations would ever run against his right to seek a reformation of his conveyance to make effective his title. If so, assuredly it would not begin to run until he knew of the distinct flaw in his title deed, or was cognizant of the adverse claims."

De Forest v. Walters, 153 N. Y. 235, 47 N. E. 294, is a case directly in point. That was an action in ejectment, and the defendant counterclaimed, alleging mistake in the description in the deed, and asked for a reformation. The court said:

"We do not think that any relief to which the defendants were entitled upon the facts alleged * * * was barred by the statute of limitations. * * * Where a party brings ejectment, based upon a deed which is the result of mistake, we can see no objection, upon principle, to a defense either to correct the deed, or to set aside, as a cloud upon title so far as it relates to land not sold or intended to be included in the description. The invalidity of the plaintiff's deed did not appear upon its face. Such a cause of action is continuous so long as the occasion remains for the exercise of the power of a court of equity to remove the cloud upon the title."

Upon the doctrine so announced, it is clear that plaintiff is entitled to relief, with costs, against Thompson and Beaver. As to other defendants, dismissed, without costs.

Ordered accordingly.