UNION FERRY COMPANY OF NEW YORK AND BROOKLYN, Plaintiff, *v.* JULIAN P. FAIRCHILD, GEORGE G. DUTCHER and JOHN L. SHERWOOD, as Permanent Receivers of ATLANTIC DOCK COMPANY, Defendants.

(Supreme Court, New York Special Term, February, 1919.)

Lease — relationship of landlord and tenant entered into by mutual mistake — exception to the rule that tenant may not dispute title of landlord until possession is surrendered — lands under navigable waters.

Pleading — when defense must contain a special denial — demurrer to defenses sustained — Statute of Limitations — demurrers to counterclaims overruled — lease — lands under navigable waters.

When a pretended lease from defendant to plaintiff's predecessor in interest of the privilege to use and occupy the southwesterly half of the slip at the foot of Hamilton avenue and the northeasterly side or face of the bulkhead and pier, for the purpose of securing erections, racks and bridges, was made in 1881, the one-half of the slip covered by the lease consisted of " open navigable waters of the East river " except as to that part which had been filled in and occupied as a public street and the lands under the waters of the slip were owned by the state, which, three months before the expiration of the term, made a grant thereof to plaintiff's predecessor in interest, which remained in possession and continued to use the slip claiming under the land grant until November 5, 1890, when plaintiff's predecessor, which for many years had operated a ferry under a franchise between the boroughs of Manhattan and Brooklyn, conveyed the fee to all its property at the foot of Hamilton avenue " including the slips and landing places and approach to said slips including the half of the slip hereinafter mentioned, and the upland and land under water at or adjacent to the foot of said Hamilton avenue and then and now used in connection with the said ferry," to plaintiff.  Down to 1915 both the plaintiff and the defendant corporations had been controlled by the same person or persons and only after a change of officers was made in the plaintiff and after investigation was it discovered that from November, 1890, to February 6, 1916, the plaintiff had paid to defendant large amounts of money, quarterly, upon

the representation and claim of defendant that plaintiff was occupying or using in operating its ferry " the part of said slip hereinafter described." In an action to have the lease and any renewals thereof declared null and void and to restrain defendant from attempting to enforce them or to interfere with plaintiff's use of the slip in controversy or any of its fixtures, the complaint, after pleading the facts and alleging that plaintiff had no adequate remedy at law, demanded judgment for the amount of rentals already paid and further demanded judgment " that the defendant has no right, title or interest or claim of any kind to the said southwesterly half of said ferry or the waters thereof or the lands under the waters thereof." *Held,* that the relationship of landlord and tenant between the parties to the original lease having been entered into by mutual mistake in assuming that defendant ever owned any substantial interest in the leased premises except the privilege of using the side or face of defendant's bulkhead and pier, etc., which privilege as alleged has been abandoned, and that no part of the premises covered by the lease is now in possession of plaintiff except the right to use the open navigable waters of the East river, the case was within the exception to the rule that a tenant may not dispute the title of his landlord until possession of the premises is surrendered and that the complaint was good.

Separate defenses alleging adverse possession and an easement acquired to adverse possession respectively, neither of which defenses contains the specific denials requisite to constitute a complete defense, held bad on demurrer and are also insufficient because of defendant's claim of sole ownership of exclusive privilege in the navigable waters of the East river, rights not derivable from either the ownership of lands under water or adjacent thereto or structures.

The complaint having demanded a money judgment, separate defenses pleading the ten and twenty-year Statutes of Limitations were discussed upon the theory that the rule governing the recovery of money paid by mistake was decisive. *Held,* that the action in essence was one to quiet title, and as the six-year Statute of Limitations was obviously applicable, neither of the statutes pleaded could be taken as against the principal demand of the complaint, that the lease and tenancy be cancelled and terminated and the title to the lands under water be settled by judicial decree; said separate defenses are also subject to demurrer for failure to incorporate therein the specific denials necessary to constitute complete defenses.

Supreme Court, February, 1919.    [Vol. 106.

Two counterclaims considered, and held to be so related to the subject matter of the action that the court may properly adjudicate them, and demurrers thereto overruled with leave to reply.

DEMURRER to separate defenses and counterclaims set up in the answer.

Forster, Hotaling & Klenke (George P. Hotaling, of counsel), for plaintiff.

Cullen & Dykman (P. S. Dean, of counsel), for defendants.

FORD, J. Novel questions are presented by this demurrer to the separate defenses and counterclaims set up in the answer. It appears from the allegations of the complaint that the plaintiff, a corporation, operates a ferry under a public franchise between the boroughs of Manhattan and Brooklyn. The defendant (now represented in the action by the receivers substituted since its . commencement) owns property adjoining that of the plaintiff at the foot of Hamilton avenue, the Brooklyn terminal of the ferry.

For many years prior to 1890 the ferry was operated by another corporation, the Union Ferry Company of Brooklyn, which on November fifth of that year sold and conveyed in fee simple absolute to plaintiff all its property at the foot of Hamilton avenue "including the slips and landing places and approach to said slips *including the half of the slip hereinafter mentioned,* and the upland and land under water at or adjacent to the foot of said Hamilton avenue and then and now used in connection with the said ferry." Plaintiff immediately entered under the deed and has since remained in possession.

Afterwards " it was represented by the defendant to the plaintiff that for many years and up to the

time of such purchase the said Union Ferry Company had paid the defendant for the right to use *the half of the slip hereinafter described* in connection with the operation of said ferry, which right and privilege defendant claimed were owned and granted by it, and defendant thereupon represented and claimed that the plaintiff was using such right and privilege and should continue such payments, and believing such representations and claim to be true and valid and in ignorance of the fact that the defendant had no valid claim, and under the mistake hereinafter set forth, the plaintiff, through its then officers, paid to the said defendant from November, 1890, down to about February 1, 1916, large sums of money consisting of quarter-annual payments of seven hundred and fifty dollars ($750), amounting altogether to over seventy-five thousand dollars ($75,000), such sums being asked for and paid upon the representation and claim of the defendant that the plaintiff was occupying or using in the operation of its said ferry *the part of said slip hereinafter described* which belonged to the said defendant.''

In explanation of the initial mistake under which these payments were made it is further alleged that down to 1915 both plaintiff and defendant corporations had been controlled by the same person or persons. After a change of officers was made in the plaintiff corporation an investigation was begun with the result that these facts were learned for the first time:

In 1881 the defendant pretended to lease to the Union Ferry Company of Brooklyn, plaintiff's predecessor in interest, '' the privilege to use and occupy the southwesterly half of the slip at the foot of Hamilton avenue '' and '' the northeasterly side or face of the bulkhead and pier, for the purpose of securing erections, racks, and bridges.''

When the lease was made the half of the slip covered by the lease consisted of " open navigable waters of the East river " except as to some part of it which had been filled in and occupied as a public street, and " the lands under the waters of said slip " were owned by the state.

On February 8, 1886, three months before the expiration of the term of the lease, the land under the waters of the half slip was " duly granted and conveyed, free from all encumbrances and claims " to the Union Ferry Company by the state and the grant was recorded in the county of Kings.

The grantee remained in possession and continued to use the slip as theretofore but claiming under the grant until the property was conveyed to the plaintiff in 1890 as before described.

It is further alleged " that the alleged right or privilege of using the side or face of defendant's said bulkhead and pier was, prior to February 1, 1916, abandoned and given up, and any ferry rack or bridge theretofore secured to any bulkhead or pier of the defendant was taken down and removed and placed upon the plaintiff's own land."

The defendant has brought three actions in the Municipal Court demanding payment of the rent for the premises demised by the original lease " because of the payments of rent up to November, 1915," and claims " that the plaintiff is a tenant and must remain a tenant and pay defendant rent for plaintiff's own property until it makes a legal surrender of its own property to the defendant who does not own and never has owned said property, and that plaintiff cannot be released or discharged from payments of rent until it does make such surrender, notwithstanding that plaintiff, as the defendant has admitted, is and has been since 1890 the absolute owner of said slip."

It is specifically alleged that the " pretended lease was, and any alleged extensions or renewals thereof were, without consideration and void and beyond the power of the said defendant to make or of the said Union Ferry Company of Brooklyn to acquire from it, and were made under the mutual mistake aforesaid."

Plaintiff alleges that it has no adequate remedy at law, that the Municipal Court is without power to grant the relief it is entitled to, that the actions in that court have been stayed during the pendency of this action and that it will suffer irreparable damage unless this court affords relief.

The complaint demands judgment declaring the lease and any renewals of it null and void and enjoining the defendant from attempting to enforce them or to interfere with the plaintiff's use of the slip in controversy or any of its fixtures. It also demands judgment " that the defendant has no right, title or interest or claim of any kind to the said southwesterly half of said ferry or the waters thereof or the lands under the waters thereof." A sum of money is also demanded for rentals already paid.

Although this demurrer is one directed against the sufficiency of defenses and counterclaims set up in the answer, yet the serious attack upon the sufficiency of the complaint necessitates most careful consideration, hence the somewhat extended resumé of the allegations contained in the initial pleading. *Baxter* v. *McDonnell,* 154 N. Y. 432. Counsel for the defendant stoutly contends that since the relationship between plaintiff and defendant is that of landlord and tenant, so recognized by both and by plaintiff's grantor by written lease and payment of rent until shortly before the commencement of the action, it is barred by the rule that a tenant may not dispute the title of the landlord until possession of the premises is surrendered. That is a rule

so well settled that citation of authorities would be a work of supererogation. But does the complaint contravene the rule?

As has been shown it alleges that the relationship was entered into by mutual mistake not discovered until 1916, and it shows a relationship between the parties to the original lease in the control and management of the two corporations which tends to explain why the mistake was not before revealed. That mistake was in assuming that the defendant ever owned any substantial interest of any kind in the premises purported to be granted by the lease, except the privilege of using the side or face of defendant's bulkhead and pier for the purpose of securing certain erections, racks and bridges. This privilege, it is alleged, has been abandoned and no part of the premises covered by the lease is now in plaintiff's possession except the right to use the open, navigable waters of the East river according to the allegations of the complaint. What are defendant's rights in those waters? If the allegations of the complaint are taken at their face value, it has no exclusive or special rights that could or would be required to be surrendered to it as a condition of bringing this action under the rule invoked.

Even if it were held that the condition requiring the demised premises to be surrendered before the landlord's title may be assailed has not been shown in the complaint to have been sufficiently complied with, yet there is an exception to the rule under which the case would fall in my opinion. It is succinctly stated in volume 24, page 940, of the Cyclopedia of Law and Procedure as follows: " Inasmuch as the estoppel to deny title is based on an admission of title shown by the tenant in accepting or retaining possession as tenant, it follows that if the relationship of landlord and tenant was induced by fraud, duress, misrepre-

sentation, or mistake, the tenant is not estopped to deny what it would not have admitted in the absence of fraud or mistake.'' Two New York cases (*Ingraham* v. *Baldwin*, 9 N. Y. 45; *Bigler* v. *Furman*, 58 Barb. 545) are cited by Cyc. as authority. To these may be added *Jackson* v. *Cuerden*, 2 Johns. Cas. 353; *Jackson* v. *Spear*, 7 Wend. 401; *Child* v. *Chappell*, 9 N. Y. 246; *Voorhees* v. *Burchard*, 55 id. 98; *Jones* v. *Reilly*, 174 id. 97.

It seems to me that the complaint is good under the exception even if the plaintiff were held technically to be in possession. I do not think that a court of equity should in any event deny a hearing to one seeking relief from the most extraordinary situation shown in this complaint. Surely, the plaintiff, operating a municipal ferry, will not be required to suspend its public service before the court will hear its case.

So far as any exclusive privilege to use the waters of the slip in question has been granted to the plaintiff for ferry purposes, that of course has its origin in public authority and it does not appear upon the face of the complaint how defendant's mere ownership of the lands under those waters or of the pier adjacent to them carries any legal right either to grant or to withhold their use.

The first and second separate defenses allege adverse possession and an easement acquired through adverse possession respectively. Neither defense contains the special denials requisite to constitute a complete defense and is therefore bad on demurrer, the cogent reasoning of the late Mr. Justice Gaynor in *Carter* v. *Eighth Ward Bank*, 33 Misc. Rep. 128, to the contrary notwithstanding. There is no longer doubt as to this rule as declared in *Douglass* v. *Phenix Ins. Co.*, 138 N. Y. 209.

It also seems to me that both these defenses are

insufficient in law because they claim exclusive owner-
ship or exclusive privilege in the navigable waters of
the East river.  Such exclusive rights are not derived
from ownership of the lands under water or of adja-
cent lands or structures.  *Jencks* v. *Miller,* 17 Misc.
Rep. 461; 29 Cyc. 362; *Burbank* v. *Fay,* 65 N. Y. 57;
*People* v. *Vanderbilt,* 26 id. 287.

The third and fourth separate defenses set up the
ten and twenty-year · Statutes of Limitations respec-
tively.  In their discussion of the sufficiency of these
defenses both sides seem to proceed upon the theory
that the rule governing the recovery of money paid
under mistake is decisive.  That would doubtless be
so in a suit brought merely to recover money so paid.
But it seems to me that while the complaint demands
a money judgment for the seemingly arbitrary sum
of $20,000 with interest from the 26th day of April,
1916, the action is in essence one to quiet title.  So far
as the right to recover money paid by mistake is con-
cerned, neither of the statutes pleaded is the appropri-
ate one, since the six-year Statute of Limitations
would obviously apply.  Hence the pleas must be taken
as against the plaintiff's principal demands, namely,
that the lease and tenancy be canceled and terminated
and the title to the lands under water be settled by
judicial decree.

Here we have a complaint alleging actual possession
and ownership of all the premises, but also alleging
that the defendant claims ownership in the same
premises and has asserted its title by three separate
actions for rent in another court.  As has been shown
the apparent relationship of landlord and tenant is not
a bar to the action, and plaintiff comes to court with
the plea that the adverse and vexatious claims of the
defendant be annulled.

The old lease, while not renewed in writing, has been

renewed as to its provisions by a holding over for yearly terms and continues to serve as a basis of defendant's claim for rent. That lease and the resulting tenancy which plaintiff alleges came into being by mutual mistake, constitute a cloud on plaintiff's title, as it seems to me. But whether or not this action has all the distinguishing features which entitle it to be classed strictly as one to remove a cloud on title, it would seem as though the same reasons exist for applying to it the principles of law applicable to actions of that class to which it is at least akin.

In *Ford* v. *Clendenin,* 215 N. Y. 10, 16, it is said: " It is well settled that an owner in possession has a right to invoke the aid of a court of equity at any time while he is so the owner and in possession, to have an apparent, though in fact not a real incumbrance discharged from the record and such a right is never barred by the Statute of Limitations. It is a continuing right which exists as long as there is an occasion for its exercise. (*Miner* v. *Beekman,* 50 N. Y. 357; *Schoener* v. *Lissauer,* 107 N. Y. 111; *Smith* v. *Reid,* 134 N. Y. 568, 577, 578; *De Forest* v. *Walters,* 153 N. Y. 229; *Gilmore* v. *Ham,* 142 N: Y. 1.) "

I conclude therefore that neither statute pleaded is a bar to the action. Both defenses like the first and second are also demurrable for failure to incorporate the necessary denials to constitute complete defenses. *Devoe* v. *Lutz,* 133 App. Div. 356.

In the first counterclaim it is alleged that it was agreed between the defendant and the Union Ferry Company of Brooklyn, plaintiff's grantor, that the land under the waters of the half slip in question " should be the property of said Dock Company and for the use of which said Ferry Company was then paying rent under the last mentioned lease," *i. e.,* the written lease whose term expired May 1, 1886. The

right to have the title to this land under water conveyed to the defendant, so far as such title had been conveyed in the grant from the state in 1886 to the plaintiff's predecessor in interest, is therefore based upon an express agreement and in consideration of the $5,000 previously paid by it for the prior conveyance of the interest of Blake in the property. Since it is further alleged that the plaintiff took title to the property and assets of its predecessor subject to all its " liabilities and obligations in respect thereto;" it seems to me that a good equitable cause of action is stated, particularly in view of plaintiff's apparent recognition of defendant's ownership or right of ownership by the payment of rent for upwards of a quarter of a century and this irrespective of whether a trust was technically created or not.

Nor does there seem to be any valid objection to the second counterclaim. All the questions presented by complaint and counterclaims are so related to the subject matter of the action that the court may properly adjudicate them in the single action. *Scognamillo* v. *Passarelli,* 157 App. Div. 433, dissenting opinion by Scott, J., on which order was reversed, 210 N. Y. 550.

It should not be overlooked moreover that there is more than the mere use of the waters of the half slip brought in question by these counterclaims. The use of " the northeasterly face of the bulkhead and pier of the Atlantic Dock Company's property for the purpose of a ferry slip, together with the northeasterly face of the said bulkhead and pier for securing the racks and bridges necessary for said ferry slip, and the privilege of maintaining a lantern at the end of the pier and of passing to and from the same " embrace rights and privileges also demised by the lease and used by the plaintiff down to the commencement

of the action, according to the counterclaim, and the ownership of those rights and privileges in the defendant and that they had a rental value, irrespective of rights claimed in the waters of the half slip, are not disputed.  Also the defendant claims certain exclusive rights and privileges in the lands under the waters of the slip by virtue of the Blake grant which was prior to the grant from the state to the plaintiff.  It does not appear how Blake acquired title to those rights and privileges.  Nevertheless the Blake grant cannot on this demurrer be treated as a nullity.

To summarize, the complaint is held to be sufficient. The first, second, third and fourth defenses are insufficient, but the two counterclaims are good.  Plaintiff may reply to the counterclaims.  No costs.

Ordered accordingly. .