WILLIAM B. BURLINGHAM, Plaintiff, *v.* JOHN J. HANRAHAN and Others, Defendants.

Supreme Court, Erie County, June 12, 1931.

*Block & Weppner,* for the plaintiff.

*Harrington & Davidson,* for John J. Hanrahan and Margaret M. Hanrahan, defendants.

LYTLE, J.   The plaintiff has brought this action to reform a certain writing purporting to restrict the plaintiff in the use of his property for a certain number of years on the ground that the writing does not express the real agreement of the parties because of a mutual mistake and the mistake of the draftsman and scrivener who prepared the formal document purporting to express the agreement of the parties.

It appears that on or·about March 30, 1920, the plaintiff and Cornelia M. Burlingham, his wife, were the owners in fee of the northwest corner lot of Hertel and Parkside avenues in the city of Buffalo. The two lots immediately to the north and facing Parkside avenue were owned by Walter D. Gregory and Mary Pattullo Gregory and the lot immediately to the west of the plaintiff's lot and situated on the northerly side was owned by Margaret Brady. All of said owners acquired title to their respective properties incumbered by a certain agreement executed by Colvin Park Estates, Inc., dated September 1, 1916, and recorded in Erie county clerk's office in liber 704 of Deeds at page 591, and by restrictive covenants and agreements recited in the deeds of conveyance from Colvin Park Estates, Inc.

In the year of 1919 negotiations were commenced to lift all of the restrictions either as contained in the aforesaid restriction agreement or in the deeds of conveyance. At the time of the negotiations the plaintiff in this action was using his property for residential purposes in accordance with the restrictions upon his property, while the other three parcels of land were still vacant. Margaret Brady, owning the parcel of land on the northerly side of Hertel avenue and adjoining the plaintiff's property on the west, was desirous of using her property for business as Hertel avenue properties in this vicinity were then being developed primarily for business uses. In order to lift the restrictions, the plaintiff was, naturally, the first person to be consulted in so far as the plaintiff had built upon his lot a substantial private dwelling devoted to purely residential purposes.

Margaret Brady, therefore, caused to be prepared a tentative or preliminary proposal for the elimination, cancellation and termination of all of the restrictions covering the four lots in question, and submitted the same to the plaintiff for his approval.

Said preliminary agreement of October, 1919, contemplated that Margaret Brady would procure all the necessary documents, writings and consents to effectuate a complete cancellation of the restrictions and she would pay the plaintiff herein the sum of $1,500 in the event she procured the necessary releases. The plaintiff, however, before executing the preliminary agreement, as prepared by Margaret Brady, insisted upon another stipulation to be incorporated in the agreement to the effect that upon the four lots in question for a period of ten years from January 1, 1920, " neither any fish market nor public garage nor gasoline station nor stable for animals shall be erected or maintained thereon." The preliminary agreement was then duly executed by the plaintiff and Margaret Brady.

To carry out the preliminary agreement it was necessary to draw a formal document and to secure the consent of the predecessor in title or original grantor, the Colvin Park Estates, Inc., which imposed the original restrictions.

Mr. Gregory, who was the president of the Colvin Park Estates, Inc., and who owned, individually, the two vacant lots immediately north of the plaintiff's property, resided in Toronto, Canada. The preliminary agreement was submitted to him, and he caused a formal document to be prepared for the purpose of releasing, canceling and terminating the restrictions aforementioned. Said formal document was executed March 30, 1920, by all the necessary parties, and recorded in the Erie county clerk's office April 13, 1920, in liber 1485 of Deeds at page 430.

Shortly before the commencement of this action the plaintiff discovered that the formal document in regard to the stipulation or restriction against fish market, public garage and gasoline station, provided that such restriction should run until twenty years from May 15, 1915, instead of ten years from January 1, 1920. Upon discovering the mistake the plaintiff brought this action to reform the formal document. All of the defendants have defaulted in pleading except the defendants Hanrahan, who acquired title to a lot facing Parkside avenue, separated from the premises of the plaintiff by an intervening lot.

The answering defendants deny that there was a mutual mistake or any mistake in the drawing of the agreement. As a defense the defendants plead that the action is barred by virtue of the Statute of Limitations, and further that they purchased the lot in reliance upon the restrictions and erected a private dwelling thereon, and that in equity there should be no reformation of the restrictions upon which said defendants relied.

The proof before me is clear, positive and convincing that in reducing the antecedent or preliminary agreement to a formal document or writing there was a mutual mistake or a mistake on the part of the draftsman. It is to be presumed that a written instrument which is carefully and deliberately prepared and executed correctly expresses the intention of the parties, yet the convincing character and quality of evidence offered by the plaintiff establishes his right to the relief sought. (*Christopher St. R. Co.* v. *23d St. R. Co.*, 149 N. Y. 51, 57; *Southard* v. *Curley*, 134 id. 81; *Baird* v. *Erie R. R. Co.*, 210 id. 225, 231; *Howland* v. *Blake*, 97 U. S. 624, 626; *Insurance Co.* v. *Nelson*, 103 id. 544, 548; *Jamaica Savings Bank* v. *Taylor*, 72 App. Div. 567; *Polhamus* v. *Hines*, 128 Misc. 299; *Millspaugh* v. *Cassedy*, 191 App. Div. 221; *Born* v. *Schrenkeisen*, 110 N. Y. 55.)

In the last case cited the court (at p. 59) said: "Where there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected."

The defendants' plea that the action is barred because of the Statute of Limitations is predicated upon the theory that the cause of action to reform a deed or a written instrument accrues at the time of the delivery of the deed or written instrument and the Statute of Limitations begins to run from that time. The plaintiff contends that the Statute of Limitations begins to run from the time of the discovery of the mistake. Both the plaintiff and the defendants cite authorities in support of their respective contentions. It seems that in an action to reform a deed, contract or other written instrument on the ground of mistake, the ten-year statute runs from the time when the mistake was made or the instrument executed and not from the time when the mistake is discovered. (*Exkorn* v. *Exkorn*, 1 App. Div. 124; *Sprague* v. *Cochran*, 70 Hun, 512; revd. on other grounds, 144 N. Y. 104; *Hoyt* v. *Putnam*, 39 Hun, 402; *Oakes* v. *Howell*, 27 How. Pr. 145.)

When the aggrieved party, however, is in possession of the property the courts have held that the statute does not begin to run against him until the party aggrieved had knowledge that a mistake had been made in the instrument sought to be reformed. (*DeForest* v. *Walters*, 153 N. Y. 229, 240, 241; *Bartlett* v. *Judd*, 21 id. 200; *Perrior* v. *Peck*, 39 App. Div. 390; affd., 167 N. Y. 582; *Chaflin* v. *Gantz*, 17 Misc. 425; *Perry* v. *Williams*, 40 id. 57; *Mastin* v. *Mastin*, 49 Hun, 609; 1 N. Y. Supp. 746; *Ulman* v. *Equitable Life Assurance Soc.*, 161 App. Div. 708; 146 N. Y. 696.)

In *Perrior* v. *Peck* (*supra*) the mistake was made by the scrivener in the description of the property conveyed by deed. The plaintiff commenced an action in ejectment and the defendant counterclaimed for a reformation of his deed. The plaintiff insisted that the right to reformation was barred as more than ten years had elapsed since the conveyance was made. The court said: "Where a grantee is in possession by virtue of his deed, claiming to own the lands he occupies, I seriously doubt whether the Statute of Limitations would ever run against his right to seek a reformation of his conveyance to make effective his title; if so, assuredly it would not begin to run until he knew of the distinct flaw in his title deed, or was cognizant of the adverse claim. (*Bartlett* v. *Judd*, 21 N. Y. 200; *DeForest* v. *Walters*, 153 id. 229; *Varick* v. *Edwards*, 11 Paige, 289.) "

The plaintiff, in seeking to reform the written instrument, which

purports to subject his property to the obligations of a restrictive covenant prohibiting the erection or maintenance of a fish market, gasoline station or public garage, etc., is asking for a judgment affecting the title to his property. The plaintiff's right to reformation of the instrument is, therefore, not barred by the Statute of Limitations, for the statute did not begin to run until the plaintiff had acquired knowledge of the mistake. (*Brennan* v. *Thompson*, 46 Misc. 317.)

The defendants assert that the plaintiff's right to reformation should be denied because the defendants had acquired certain rights, relying upon the restrictions, and have an equity superior to that of the plaintiff. The plaintiff, answering the defendants' contention, cites a number of authorities to the effect that the right to reformation may not be defeated by the defendants who acquired their property without knowledge of the mistake in the absence of any conduct on the part of the plaintiff calculated to mislead the defendants. (*Jamaica Sav. Bank* v. *Taylor*, 72 App. Div. 567; *Central Trust Co.* v. *West India Imp. Co.*, 169 N. Y. 314; *Stark* v. *Masonic Life Assn.*, 180 N. Y. Supp. 235; affd., 194 App. Div. 900; *Andrews* v. *Gillespie*, 47 N. Y. 487; *Crippen* v. *Baumes*, 15 Hun, 136; *Renz* v. *Ernst*, 160 N. Y. Supp. 577; *Penfield* v. *Village of New Rochelle*, 18 App. Div. 83; affd., 160 N. Y. 697; *Arnstein* v. *Bernstein*, 127 App. Div. 550; *Reeves* v. *Kimball*, 40 N. Y. 299, 311.)

It appears that the defendants at no time prior to their purchase of the lot facing Parkside avenue and the erection of a dwelling thereon, had any actual knowledge of the terms of the restriction, but were under the impression that the property they purchased and the lots immediately to the north were restricted to residential use. The lots in the vicinity facing Hertel avenue were already being used for business, except that the plaintiff had developed his corner lot for residential use. From the evidence I cannot find that the defendants purchased and developed their property in reliance upon the restrictions as contained in the instrument sought to be reformed.

Where a reformation of the instrument would operate to the actual prejudice of the intervening rights of *bona fide* purchasers or incumbrancers a court of equity, as a general rule, would not exercise its jurisdiction. The defendants are deprived of no substantial right or benefit if the reformation is granted. The defendants have failed to establish that the reformation of the restriction would be inequitable.

The mistake not having operated to the actual prejudice of the defendants, sound equitable principles require that relief therefrom be not denied at the behest of parties who have not suffered as a

consequence of the mistake. (*Batto* v. *Westmoreland Realty Co.*, 231 App. Div. 103; *Simms* v. *Simms*, 139 Misc. 726; *Matter of Passero & Sons*, Id. 636; 3 Williston Cont. § 1573; note in 44 A. L. R. 78.)

The plaintiff is, therefore, entitled to the relief prayed for. Let findings be prepared accordingly.