(No. 51675.-

THE L. E. MYERS CO., Appellee, v. THE HARBOR INSURANCE CO., Appellant.

*Opinion filed September 19, 1979.*

Schaffenegger, Watson &. Peterson, Ltd., of Chicago (Jack L. Watson, of counsel), for appellant.

French & Rogers, of Chicago (Richard G. French and Timothy G. Keating, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

The plaintiff, L. E. Myers Co., filed an action in the Circuit Court of Cook County against the defendant, Harbor Insurance Co., for a declaratory judgment that an insurance policy issued by the defendant provided coverage for damages sought in a lawsuit brought against the plaintiff by a third party in the courts of Wisconsin. The plaintiff and the defendant each moved for judgment on the pleadings, the circuit court granted the plaintiff's motion, and the appellate court affirmed (67 Ill. App. 3d 496). We granted the defendant's petition for leave to appeal. The facts, as framed by the pleadings and by certain admissions of fact by the parties, may be summarized as follows:

The plaintiff is in the business of constructing facilities for electric utilities. In 1974 the plaintiff, acting through its insurance broker, Marsh & McLennan, Inc., purchased a comprehensive general liability policy from Continental Insurance Company ("Continental"), in the amount of $100,000, to become effective September 30, 1974, covering liability for certain types of property damage arising out of work performed by the plaintiff. Although the plaintiff did not attach a copy of the Continental policy to its complaint, the parties agree that as originally written the policy contained an indorsement (Indorsement No. 7) excluding certain situations from liability, among which was the following:

"With respect to the completed operations hazard, to property damage to work performed by the named insured arising out of the work or any portion thereof, or out of the materials, parts or equipment furnished in connection therewith."

Continental is not a party to the present suit.

The plaintiff, again acting through Marsh & McLennan, also purchased an "umbrella" policy from the

defendant, also effective September 30, 1974, under which the latter provided coverage for damages in excess of $100,000 covered by the underlying Continental policy, but not over $1,000,000. The policy issued by the defendant contained the following provision, known in the trade as a "broad as primary" indorsement:

"It is understood and agreed that in the event of loss for which the insured now has coverage under the underlying insurances set out in the attached schedule, the excess of which would be recoverable hereunder, except for terms and conditions of this policy which are not consistent with the underlying, then, notwithstanding anything contained herein to the contrary, this policy shall be amended to follow the terms and conditions of the applicable underlying insurances in respect of such loss."

The umbrella policy also provided excess damages for several other underlying policies of insurance of various kinds, some · of them issued by carriers other than Continental.

In 1975 certain transmission lines and towers being constructed by the plaintiff under a contract with Madison Gas and Electric Co. ("Madison") were toppled during a windstorm, and Madison brought suit against the plaintiff to recover damages of $10,000,000. Timely notice of the suit was given to both Continental and the defendant. Although no copy of Madison's complaint is included in the record, the parties agree that the damages claimed under it were for the replacement cost of the transmission lines and towers. The parties also agree that such damages would fall within the exclusion mentioned above.

Continental did not disclaim liability, but the defendant wrote the plaintiff calling attention to the exclusion found in Indorsement No. 7, and stating that the defendant would therefore assume no liability for the damages sought. While the umbrella policy issued by the defendant specifically identifies the underlying policy with Continental, the complaint does not allege and it does not

otherwise appear that a copy of that policy was furnished to the defendant. On the contrary the defendant admitted that it did not see the underlying policy at the time the umbrella policy was issued, and saw it only after learning of the suit filed by Madison.

Following receipt of the defendant's disclaimer of liability, the plaintiff, Marsh & McLennan, and Continental engaged in correspondence with respect to the preparation of Indorsement No. 7, as reflected by exhibits attached to the complaint. From these exhibits it appears that the exclusion found in the indorsement resulted from a failure on the part of Continental to follow a specific instruction given by Marsh & McLennan on behalf of the plaintiff. The instruction was that the exclusion should be no broader than that contained in a comparable liability policy under which the plaintiff was at that time insured by a different carrier. In that policy the exclusion was limited to a specific job with a Nebraska public power district, wholly unrelated to the contract between the plaintiff and Madison. Continental agreed that it had erred in failing to limit the exclusion in that way, and Marsh & McLennan in turn conceded that it had failed to notice this omission when it received the policy. The plaintiff does not maintain that the defendant knew of the 1974 discussions about the exclusion when they took place. One may also infer that neither the plaintiff nor its broker examined Indorsement No. 7 of the Continental policy until after receiving the defendant's disclaimer.

As the defendant admitted, Continental agreed to incorporate in the policy the limitation referred to above, and accordingly issued a revised indorsement which did so. Upon being advised of the reformation of the policy agreed upon between the plaintiff and Continental, the defendant nevertheless persisted in its disclaimer, and this suit followed. We were advised by counsel for the defendant in oral argument that the suit brought against

the plaintiff by Madison was settled for $300,000.

The parties are in agreement that the insertion of the exclusionary provision was a mutual mistake of fact for which reformation is a proper remedy as between the contracting parties, that reformation may be effectively accomplished by agreement of the parties without a court decree, and that if the indorsement as corrected is part of the policy, then the claimed loss is covered. The only issue is whether the defendant, which was neither a party to the contract between the plaintiff and Continental, nor privy to it, is bound by the reformation.

The defendant's argument that it is not, and that its liability must be determined from the language of the policy as originally written, rests in part upon the following circumstance regarding the negotiation of the umbrella policy with Marsh & McLennan, which the plaintiff admitted: The "broad as primary" indorsement initially proposed by Marsh & McLennan did not contain the word "now", which presently appears in that indorsement just before the words "has coverage," and that word was inserted at the insistence of the defendant. The indorsement thus was made to read "now has coverage."

The purpose of this addition would ordinarily be merely to make sure that no additions to the primary policy which the plaintiff and Continental might later incorporate by way of amendment would be covered by the umbrella policy. The defendant contends, however, that the word "now" was designed also to prevent the correction of mistakes which had already taken place in reducing the original agreement to writing. There is no evidence of what the parties' intent may have been in making this change, and we think the broad purpose now ascribed to it by the defendant cannot be accepted. Such a purpose, moreover, would be inconsistent with the defendant's lack of concern with the definition of coverage

in the primary policy, as evidenced by the defendant's willingness to issue its own policy without even reading the underlying policy.

The defendant relies heavily on *Pulley v. Luttrell* (1958), 13 Ill. 2d 355, and other decisions of this court relating to the reformation of deeds in which the rule is laid down that a deed will not be reformed because of a mistake on the part of the original grantor and grantee as against a *bona fide* purchaser for value who is without notice of that mistake or of facts which would put him on inquiry. (13 Ill. 2d 355, 359.) The defendant claims the benefit of that rule on the ground, as stated in its brief, "*[I]f* Harbor had read the Continental policy in advance, such reading still would *not* have given Harbor notice of the mistake in that policy nor put it on inquiry." (Emphasis in original.)

The appellate court disposed of that argument by pointing out that there had been no reliance by Harbor on the terms of the Continental policy. The court stated (67 Ill. App. 3d 496, 504):

"*** Harbor cannot be said to be a *bona fide* purchaser or similarly situated, as it was willing to insure on the same terms as the agreement between Continental and Myers and could not have relied on the erroneously expressed instrument because Harbor never saw it until after the loss had occurred. Harbor's lack of knowledge of the mistake cannot be considered determinative in the absence of reliance on the mistakenly drafted instrument."

The defendant criticizes this analysis since, it says, *Pulley v. Luttrell* and other decisions cited in that case do not speak in terms of reliance but of lack of notice. We do not believe the criticism well founded. While decisions applying the good-faith purchaser doctrine may not

explicitly refer to the element of reliance, the doctrine clearly presupposes it, for the party resisting reformation is necessarily relying on the provisions of the deed under which he claims title. It cannot be assumed that a buyer of real property in these circumstances would take title without awareness of the terms of conveyence, and there is no intimation to the contrary in the opinions referred to.

The defendant also relies on the decision of the appellate court in *Vial v. Norwich Union Fire Insurance Society* (1912), 172 Ill. App. 134. In that case the plaintiff was issued a fire insurance policy by a New York company, which then entered into a reinsurance agreement with the defendant under which the latter agreed to reinsure all property "now covered by policies and contracts issued by [the insurer] according to their terms and conditions." The policy as issued to the plaintiff covered only his dwelling, and when a fire destroyed certain out-buildings both the insurer and the defendant refused to make payment because of lack of coverage. The insurer, shortly before, had ceased doing business in Illinois, and the plaintiff brought suit against the defendant alone seeking reformation of the policy on the ground that it had been the intention of the parties to include all improvements on the premises. The appellate court reversed a decree for the plaintiff in an opinion which likened the position of the defendant to that of an innocent person affected by a contract but not a party to it. 172 Ill. App. 134, 140-41.

*Vial* was affirmed by this court (*Vial v. Norwich Union Fire Insurance Society* (1913), 257 Ill. 355), but on a different theory, namely that the reinsurance agreement imposed only a duty to indemnify the insurer, and did not constitute an assumption of whatever liability the latter might have to its policy holders. The rationale of the appellate court thus cannot be said to have been endorsed

12

by this court. The present case, moreover, differs from *Vial* since the defendant is not a reinsurer but issued its own policy to the plaintiff.

We conclude that the judgment of the appellate court should be affirmed. The defendant admittedly did not see a copy of the Continental policy before issuing its own, and there is no claim made that the defendant had been advised by either the plaintiff or the plaintiff's broker as to what coverage was provided by the Continental policy. There is no contention by the defendant that the premium which it charged was not in an amount sufficient to purchase coverage under the policy as reformed.

*Judgment affirmed.*