576 F.Supp. 561 (1983)
GREAT ATLANTIC INSURANCE COMPANY, a corporation, Plaintiff,
v.
LIBERTY MUTUAL INSURANCE COMPANY, a corporation, Defendant.
No. 82-1833C(B).
United States District Court, E.D. Missouri, E.D.
December 23, 1983.
*562 Ted L. Perryman, St. Louis, Mo., for plaintiff.
Ralph K. Soebbing, Gerre Langton, St. Louis, Mo., for defendant.

MEMORANDUM AND ORDER
REGAN, District Judge.
Defendant has moved for judgment notwithstanding the verdict or in the alternative for a new trial. In our judgment, the motions are well taken.
This litigation arose out of an explosion in Kennett, Missouri, on May 2, 1979, caused by a defective product manufactured and sold in the United States by American Hydrotherm Corporation. By reason of the explosion, two people were *563 killed and extensive property damage occurred, as the result of which American Hydrotherm became obligated to pay a total of $766,475.37 in settlement of the claims asserted against it. Of this amount, Liberty Mutual Insurance Company paid $500,000 and plaintiff Great Atlantic Insurance Company paid the balance of $266,475.37.
The controverted issue in this case is whether Liberty Mutual should reimburse Great Atlantic for the amount it paid. The problem was created by the fact that Liberty Mutual had issued two separate insurance policies to American Hydrotherm, each of which as written purported to provide $500,000 product liability coverage. Great Atlantic's policy provided $500,000 excess liability coverage over the primary insurance.
It is and was the position of Liberty Mutual that only one of the two $500,000 liability policies (referred to as the KA policy) was intended by the parties to apply to the assured's operations in the United States. The other policy (referred to as the LG policy) was intended by the parties to limit coverage thereunder to the assured's operations in Canada, but that through a clerical error (mutual mistake) it did not accurately reflect the intentions of the parties, so that it is and was Liberty Mutual's contention that the LG policy did not in fact provide an additional $500,000 primary liability coverage to American Hydrotherm for the Kennett, Missouri casualty.
The issue of intent is not whether the parties intended that the LG policy provide any product liability coverage (either on an if basis or otherwise) as Great Atlantic argues, but rather whether the parties intended that the policy provide such coverage for operations in the United States.
The policies in question, issued in early 1979, are basically renewals of policies originally issued in 1976. The KA policy is a multiperil policy, intended to provide a broad range of coverages to American Hydrotherm and its various subsidiaries. That company had a small sales office, but no production facilities, in Canada. For technical reasons, Liberty Mutual was unable to include the Canadian sales office in the KA policy, and for that reason issued the LG policy for the sole purpose of affording coverage for any possible liability exposure of American Hydrotherm at its Canadian location. Unquestionably, American Hydrotherm wanted full coverage, but not double coverage.
Through a clerical oversight, Liberty Mutual's customary practice of attaching an endorsement to the LG policy excluding liability arising out of American Hydrotherm's operation in the United States was not followed. As the result of this oversight, the printed form of the LG policy which included in its definition of the "policy territory" the entire world, including, of course, the United States, remained in the policy.
That such was not the intention or agreement of either party is evidenced not only by the uncontradicted testimony relating thereto, but also by the amount of premium charged for the liability coverage of $500,000 in each policy. The advance premium for the KA policy liability coverage was almost $30,000 as compared to the $251 premium for the LG policy coverage. The difference in the final audited premiums was even greater. It does not comport with reason to believe that either party to the Liberty Mutual insurance contracts intended, contemplated, or agreed, contrary to the evidence, that Liberty Mutual would, absent a mistake, provide identical $500,000 coverage in two policies issued at the same time to the same assured for premiums so grossly disparate.
There is not a scintilla of evidence (nor even a contention) that Great Atlantic issued its $500,000 excess liability policy in the belief that Liberty Mutual's primary coverage was other than $500,000. Its policy, negotiated by the JLS Group as agents for American Hydrotherm, demonstrates the contrary. Therein, the primary insurance policy was described as bearing the KA number, and the primary insurance limits were set forth at $500,000, at a time when the JLS Group had knowledge of the *564 existence of both the KA and LG policies. And it is significant that The Great Atlantic policy specifically states that the total limits of liability (that is, the combination of the primary and the excess coverage) is $1,000,000.
It is thus obvious that if the coverage of both the KA and the LG policies of Liberty Mutual (aggregating $1,000,000) applied and were required to be exhausted before American Hydrotherm could make a claim against the Great Atlantic policy, the result would be that the Great Atlantic policy would afford no coverage whatever to American Hydrotherm for the $6,400 premium it was charged and paid. Construing the Great Atlantic policy against the insurer to avoid this unconscionable result, it follows that the policy provides excess coverage over the $500,000 limits of the KA policy and not over the combined totals of both the KA and LG policies.
In our judgment, the evidence in this case meets all the legal requirements for a court-decreed reformation of the LG policy. Prior to the issuance of that policy the parties agreed that it would cover only the Canadian operations of American Hydrotherm. Unquestionably, such was their intention. Where, as here, the policy does not incorporate the true prior intention of the parties, a mutual mistake exists, entitling either party to a reformation. Schimmel Fur Co. v. American Indemnity Co., 440 S.W.2d 932, 938 (Mo.1969).
It is well settled that to establish a mutual mistake it is not necessary to show that the parties agreed upon the particular language to be used. All that must be shown, as here, is that the parties had agreed to accomplish a particular object, and that the parties agreed to accomplish a particular object, and that the policy, as issued, was, through a clerical error, insufficient to effectuate their intention. St. Louis County National Bank v. Maryland Casualty Co., 564 S.W.2d 920, 924 (Mo.App.1978); Snider v. Miller, 352 S.W.2d 161, 165 (Mo.App.1961). And it is immaterial who employed the scrivener or draftsman of the instrument or even that the draftsman was one of the parties. Snider v. Miller, supra, at 164.
We find nothing in the cases cited by Great Atlantic in opposition to motions which could alter our conclusions. And we note that in each of the cited cases, the facts were in dispute as between the insured and the insurer.[1] In the instant case, the parties to the policy contract are in agreement as to what had been agreed upon and as their mutual intentions. Clearly, there was no need for a court-ordered reformation. The parties to the contract had the right to correct their mistake without obtaining a decree to that effect. And that is precisely what they did.
Great Atlantic argues that it is subrogated to the rights of American Hydrotherm and stands in its shoes by reason of the payment it made. Assuming for present purposes that this is true, it is equally true that the rights of Great Atlantic are no greater than the rights of American Hydrotherm under the LG policy. Hence, it is only if in fact there was no mutual mistake subject to correction as of the time the payment was made that Great Atlantic could be held to have any rights based on the LG policy.
The cases cited by Great Atlantic are inapposite. Thus, what the 10th Circuit Court of Appeals ruled in Pennsylvania Casualty Co. v. Phoenix, 139 F.2d 823 (10th Cir.1944), was simply that in an action by a judgment creditor to reach and apply the insurance money provided for in a liability insurance policy covering the defendant in a personal injury suit (under what are now Sections 379.195 and 379.200 *565 RSMo.), the rights of the injured plaintiff by reason of that statute, accrued on the date of the accident and could not be impaired by subsequent agreement or collusive action of the insured and insurer. Such is not the instant situation. Not only are Sections 379.195 and 379.200 inapplicable to a case such as this, but the correction of the LG policy coverage or "reformation" thereof by the insured and insurer was not based on a subsequent agreement, but rather on the pre-existing agreement and intention of the parties as of the time the policy was issued.
The 1941 Missouri case of Hocken v. Allstate Ins. Co., 235 Mo.App. 991, 147 S.W.2d 182, adverted to by Great Atlantic was a garnishment action under the same statute as in Pennsylvania Casualty, in which the insurance company defended on the ground that after the injured party had filed a damage suit against the insured, the insurer filed a declaratory judgment action wherein it obtained a judgment voiding and cancelling the policy on the ground of the insured's fraud prior to the accident. The Court held that the injured plaintiff was not bound by that judgment for the reason that she was not (as she should have been) joined as a party to that suit, and remanded the case for the purpose of enabling the insurer to establish the invalidity of the policy in the garnishment action.
Finally, we question whether, under the admitted and uncontroverted facts, Great Atlantic is actually a subrogee or has a right of action against Liberty Mutual by reason of having made the payment to American Hydrotherm. The present case is wholly unlike United States v. United Services Automobile Ass'n, 238 F.2d 364 (8th Cir.1956). In that case, the insurer was unconditionally liable to its insured for the damages he sustained, irrespective of whether the insured had a valid claim against the third person (the United States). That is, without regard to any other circumstances, United Services admittedly owed its insured the money it paid him. In the instant case, however, Great Atlantic could not be liable at all to American Hydrotherm if the LG policy afforded coverage for the casualty, so that under its theory, the money Great Atlantic paid to American Hydrotherm never was owing to it.
Although Great Atlantic does not in terms so argue, what it really contends is that it paid its money to American Hydrotherm under a mistake of fact.[2] If so, conceivably it may be able to assert a claim against American Hydrotherm for the recovery of the money alleged mistakenly paid. However, the existence of such a remedy does not, particularly under the facts here present, create a right to sue Liberty Mutual. We add that in the United Services case, the Eighth Circuit expressly held that "(a)n insurer can take nothing by subrogation except such rights as the insured had." American Hydrotherm, admittedly, has no rights under the LG policy to which Great Atlantic could be subrogated. The fact that the parties corrected their mutual mistake after Great Atlantic filed this suit does not affect their right to do so. See Truck Insurance Exchange v. Wilshire Ins. Co., 8 Cal.App.3d 553, 87 Cal.Rptr. 604 (1970).
The sum and substance of the foregoing is that Great Atlantic is seeking to profit by the inadvertent mistake of Liberty Mutual for the purpose of obtaining money to which it is not entitled. The evidence admits of but one conclusion, namely, that Great Atlantic is not entitled to recover against Liberty Mutual. Accordingly, an order will be entered setting aside the verdict and judgment herein and entering judgment for defendant and against plaintiff.
IT IS FURTHER ORDERED that if the judgment is hereafter vacated or reversed, the Court hereby sustains defendant's alternative *566 motion for a new trial, and conditionally orders a new trial herein on the grounds (1) that the verdict of the jury is against the overwhelming weight of the evidence, and (2) that the verdict-directing instruction for plaintiff was prejudicially misleading in failing to require (a) a finding that the LG policy applied to the loss in Kennett, Missouri, and (b) a finding that plaintiff's policy provided excess insurance coverage only over the combined coverages of both KA and LG policies.
NOTES
[1] The Eighth Circuit decision cited by plaintiff (State Farm Mutual Auto Ins. Co. v. American Cas. Co., 433 F.2d 1007 (8th Cir.1970)) arose under North Dakota law. Neither the District Court nor the Court of Appeals, in affirming the District Court, discussed or ruled the issues here involved. That case was concerned only with the proper construction of the policy language which the insurer was contending should be (in effect) modified on equitable considerations. In any event, that case does not construe Missouri law.
[2] At the time of the payment, Great Atlantic was aware of the existence of another Liberty Mutual policy. Yet, instead of litigating the issue of the coverage thereunder, it paid its insured the money which it now claims was not owing but which American Hydrotherm then and now claims was owed to it by plaintiff.