NATIONAL BEN FRANKLIN INSURANCE COMPANY, Plaintiff-Appellant, *v.* PETER DAVIDOVITCH, Adm'r of the Estate of Mary Davidovitch, *et al.*, Defendants (Employers Insurance Company of Wausau, Defendant-Appellee).

First District (2nd Division)   No. 83—562

Opinion filed March 27, 1984.—Rehearing denied April 23, 1984.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini and Frank L. Schneider, of counsel), for appellant.

Schaffenegger, Watson and Peterson, Ltd., of Chicago (Jack L. Watson, of counsel), for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff National Ben Franklin Insurance Company (National) appeals from a summary judgment granted to defendant Employers Insurance Company of Wausau (Employers). The issue on appeal is whether the circuit court erred by denying retroactive reformation of an erroneous endorsement in an insurance policy so as to exclude coverage to an individual mistakenly classified as an insured by the endorsement.

On or about April 6, 1974, Dr. Henry Chan was "moonlighting" in the radiology department of Palos Community Hospital (Palos) as an employee of Radiology and Nuclear Association, S.P., an independent contractor serving Palos under an oral agreement. On that date, Chan interpreted certain X rays of Mary Davidovitch, who subsequently died, allegedly as a result of Chan's negligent failure to diagnose a cancerous lesion. In March 1976 a wrongful death action was filed on her behalf, naming as defendants Palos, Chan and Dr. John H. Pai, an emergency room physician.

Palos then possessed a hospital professional liability insurance pol-

icy issued by National as contracted for by National and the St. George Hospital Corporation (St. George), Palos' parent corporation. A policy endorsement provided that its "definition of insured" included "any employees *** staff members *** and others performing services" for Palos. Chan carried his own professional liability insurance with Employers, which provided basic coverage in the absence of other insurance, but coverage only in excess of the maximum provided by other insurance if available.

On April 30, 1976, National notified Chan by letter that it would defend him in the suit because he was a "salaried employee at the hospital" under Palos' policy. National also advised Chan to contact his own attorney and insurance carrier because of potential excess liability exposure. National's attorneys subsequently appeared for Chan.

Following Chan's notification, Employers began an investigation. On May 5, 1976, Chan told Employers' adjuster he was an employee of "Radiology Associates" and an independent contractor. Employers notified National of the excess coverage, but did not appear for Chan.

In May 1978, Michael Ehrens, Chan's personal attorney, inquired of Rudolph Schade, one of National's attorneys, as to Chan's status as Palos' employee at the time of the subject incident. Schade then requested verification of Chan's status from Underwriters Adjusting Company, which, in turn, was informed by Palos on May 30, 1978, that Chan was not its employee. On July 3, 1978, Underwriters wrote to Ehrens that Chan was never Palos' employee and was not entitled to be defended by National. By copy of the letter sent to Employers, National advised it was "tendering all further defense of Dr. Chan to Employers." The letter noted that National would continue defending Chan "on an accommodation basis only," until a substitution of attorneys could be effected, and that National's continued defense was "not to be construed as an admission *** of any obligation to defend Dr. Chan."

Notwithstanding the foregoing events, National made no effort to withdraw its appearance for Chan until August of 1979, some 15 months after it learned of Chan's employment status at Palos, when the cause was already on the trial assignment call. Its motion to withdraw at that time was denied by the circuit court as coming too late. At some point prior to November 28, 1978, William J. Harte, another of Chan's personal attorneys, appeared for Chan and subsequently demanded that National settle the suit for $200,000; National refused. Although Employers initially refused to assume Chan's defense, Chan on March 7, 1980, entered an agreement with Employers under which Employers settled all claims of the Davidovitch estate against Chan

for $190,000 and thereby became subrogated to all of Chan's rights.

Meanwhile, prior to Employers' settlement, National initiated the present declaratory action on March 2, 1979, seeking only to deny coverage to Chan under its policy. Employers filed a counterclaim on April 30, 1980, alleging that Chan was an insured under Palos' policy and Employers, as Chan's subrogee by virtue of the settlement, was entitled to reimbursement for the $190,000 it expended. National thereafter amended its complaint on September 18, 1981, in which it averred that policy coverage by endorsement of "staff members" was a mistake and was never intended by the contracting parties and prayed for policy reformation to exclude such persons.

National and Employers filed cross-motions for summary judgment on July 6, 1982. On August 9, 1982, the circuit court granted Employers' motion and National's motion was denied. The court asserted that reformation was prospective only and could not affect Chan's status because "*** [Chan] relied to his detriment on the coverage." National's motion to vacate the summary judgment was denied and judgment for $190,000 entered in Employers' favor.

■ National contends that despite apparent coverage for Chan, no actual coverage existed since the parties to the insurance agreement, National and St. George, properly reformed the policy by deleting the mistaken endorsement and substituting the corrected one. The asserted reformation is undated; however, the affidavit to which it is attached is dated February 26, 1982. The reformation of a written contract is premised upon mutual mistake by the contracting parties, among other reasons, in reducing their agreement to writing; reformation permits amendment in order to conform the written instrument to the actual agreement reached. (*Harley v. Magnolia Petroleum Co.* (1941), 378 Ill. 19, 28, 37 N.E.2d 760.) Such contracts include insurance policies. (17 Couch on Insurance Reformation sec. 66:1, at 280 (2d ed. 1983).) Equity cautions, however, that reformation if misapplied can lead to more damage than that caused by its denial. (*Booth v. Cole Corp.* (1970), 121 Ill. App. 2d 77, 83, 257 N.E.2d 265.) For that reason, mutual mistake must be clearly and convincingly proven. (*All Brake & Drive Unit Service, Inc. v. Peterson* (1979), 69 Ill. App. 3d 594, 596, 388 N.E.2d 93.) In the instant case, that burden has been fulfilled in showing that the subject endorsement was mutually mistakenly included by the parties in the policy and was thus a proper subject for reformation. Sister Margaret Wright, president of St. George, averred that the policy was never intended to provide professional liability coverage for nonemployee staff physicians, as did Richard Coglianese, one of National's underwriters, who swore that

Chan was not an intended hospital policy beneficiary.

National's argument, that the policy should be reformed *ab initio*, thereby denying coverage to Chan under the erroneous endorsement, however, must be rejected. In *L. E. Myers Co. v. Harbor Insurance Co.* (1978), 67 Ill. App. 3d 496, 384 N.E.2d 1340, *aff'd* (1979), 77 Ill. 2d 4, 394 N.E.2d 1200 (*Myers*), cited by both parties, the appellate court focused on whether the third person there involved had actually relied upon the erroneously drafted instrument. Harbor, the excess insurance carrier, admittedly had not seen the primary policy until after suit had been brought; it could not have relied upon it in issuing its own policy. (*L. E. Myers Co. v. Harbor Insurance Co.* (1978), 67 Ill. App. 3d 496, 504.) Therefore, reformation was permitted to relate back. The supreme court likewise stressed Harbor's lack of notice as to the primary policy's exact terms at the time Harbor issued its excess policy. (*L. E. Myers Co. v. Harbor Insurance Co.* (1979), 77 Ill. 2d 4, 10.) Certain factual differences between *Myers* and the case *sub judice* are evident. Reformation in *Myers* resulted in policy coverage; here reformation would deny coverage. One of the parties in *Myers* seeking reformation was itself thereby incurring a financial obligation, which militated against the possibility of collusion; National here is trying to absolve itself of liability by reformation. In *Myers*, the reformation was effected while the underlying litigation there was still pending; the instant reformation was not attempted until after the original suit had been already settled.

■ It is significant that in *Myers* the third party was an additional insurer; here the third party was an additional insured. Because of this crucial difference, estoppel was not an issue in *Myers*; here, because National assumed Chan's defense early on, and thereby assertedly led him to rely to his injury upon the existence of coverage, estoppel may be raised as an effective defense to the retroactive effect of the reformation with respect to Chan. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 195, 355 N.E.2d 24.) In the instant case, National conducted Chan's defense without reserving its rights for more than two years after entering the case. (*Gibraltar Insurance Co. v. Varkalis* (1970), 46 Ill. 2d 481, 487, 263 N.E.2d 823; *Apex Mutual Insurance Co. v. Christner* (1968), 99 Ill. App. 2d 153, 161-62, 240 N.E.2d 742.) The case cited by National, *New York Life Insurance Co. v. Rak* (1961), 30 Ill. App. 2d 86, 173 N.E.2d 603, *aff'd* (1962), 24 Ill. 2d 128, 180 N.E.2d 470, is not helpful. There a life insurance policy was reformed to conform to the insurance application made part of the policy, notwithstanding the fact that such reformation took place after the death of the insured, is inapposite to the

facts in the case at bar.

A party claiming the benefit of an estoppel must prove reasonable reliance upon the acts or representations of the party sought to be estopped, without knowledge of or convenient means of learning the true facts. (*Allstate Insurance Co. v. National Tea Co.* (1975), 25 Ill. App. 3d 449, 462, 323 N.E.2d 521; *Meakens v. City of Chicago* (1980), 86 Ill. App. 3d 60, 63, 407 N.E.2d 893.) The "true facts" here are that the policy, as it then existed, expressly provided Chan with coverage. National insists that Chan knew National's defense was based upon the faulty premise that he was Palos' employee; thus, he had no right to rely upon National's conduct of his defense in order to assert an estoppel. We disagree. National's April 30, 1976, letter to Chan, which advised him of his defense by National because he was "a salaried employee at the hospital," cannot be said to have put Chan on notice as to National's error; he was in fact a "salaried employee," a resident radiologist who worked "at" the hospital. He performed the same functions in substitution for the staff radiologist on weekends, and, in fact, provided services for the hospital at the hospital, utilizing the hospital's equipment and facilities in diagnosing the hospital's patients. A subsequent letter to Chan from National's attorneys notes that Chan's interests are the same as those of Palos, since he was "an employed physician of the hospital." This letter also fails to specify that Chan was being defended because he was a hospital employee. That Palos required Chan to carry his own liability insurance need not be construed as notice of noncoverage. Notably, Michael Ehrens, Chan's personal attorney, inquired of National's attorneys representing Chan as to his hospital employee status. Had Chan indeed been aware of noncoverage, his attorney would not have raised this question. Contrary to National's contentions, therefore, the undisputed facts do not establish that Chan was aware of National's mistake.

Estoppel arises only where the party asserting it has relied to its prejudice or detriment on the other party's conduct. (*Old Mutual Casualty Co. v. Clark* (1977), 53 Ill. App. 3d 274, 279, 368 N.E.2d 702.) The mere appearance and assumption of the defense by an insurer of its insured does not presume prejudice; where, however, the insured is induced by the insurer's actions "to surrender his right to control his own defense, he has suffered a prejudice which will support a finding that the insurer is estopped to deny policy coverage." (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 196, 355 N.E.2d 24.) In *Maryland,* no prejudice was found where the insurer defended the insured, who was also represented by private counsel, for three months. Contrariwise, in *Textile Machinery, Inc. v. Continental Insurance Co.*

(1980), 87 Ill. App. 3d 154, 409 N.E.2d 1, *appeal denied* (1980), 81 Ill. 2d 606, the insurer's mistaken defense of the insured for 2½ years, in which action the insured's own attorney did not participate, was held to be sufficiently prejudicial to support an estoppel. The instant facts closely parallel those in *Textile*, and that case is dispositive.

National defended Chan for over two years before notification of withdrawal. Of what that defense consisted, specifically, is unknown in the absence of the full record. It is nevertheless apparent that the Davidovitch case was not defaulted for any lack of defense nor dismissed for noncompliance with rules or law. The defense was sufficiently vital, substantial and effective to provide a basis for compromise of the *ad damnum* for less than two-fifths of the amount asked. While National's attorneys were defending Chan, they acted in his behalf as though policy coverage by National existed, thereby permitting him to rely entirely upon National for his defense. (*Gibraltar Insurance Co. v. Varkalis* (1970), 46 Ill. 2d 481, 488; *Textile Machinery, Inc. v. Continental Insurance Co.* (1980), 87 Ill. App. 3d 154, 157.) Chan was not represented in the litigation by his own attorney during this time. William J. Harte did not enter his appearance on Chan's behalf until some point around November 28, 1978, when he promptly demanded that National settle the suit for $200,000. National refused. Whether Chan would have settled earlier or for a lesser amount, or any, had his personal attorney represented him from the outset of the litigation is moot. The controlling fact, establishing Chan's surrendering his defense to National, is that for over two years the decision not to settle was made by National's attorneys. Chan's right to estop National from denying him coverage was thus sufficiently established.

■ The remaining issue is whether Employers, by reason of its own conduct in this matter, may stand in Chan's shoes as his subrogee. National contends that Employers' knowledge of Chan's true employment status should have alerted Employers to National's mistake, since it was "common knowledge in the insurance industry" that a hospital's liability policy does not extend to cover the professional services of staff physicians. Chan, however, was not a mere "staff physician" attending to his own patients while utilizing hospital facilities, but provided services there only for Palos, doing part-time the same work as its full-time employee. As excess insurer who was not privy to the actual terms of National's policy, Employers' knowledge of Chan's specialized status cannot be said to have put it on notice of National's error. Moreover, even if Employers had seen the policy, it would have found that coverage was in fact provided to "staff members" and "others performing services for" Palos. In an effort to

show Employers' bad faith, National points to internal memoranda which speculate upon provisions of National's policy. They suggest no firm knowledge, however, of National's mistake, and Employers owed no duty to National to inform it otherwise. An employee's recommendation that Employers "just lay back in the weeds and only communicate with the policyholder alone" was rejected. National was informed of Employers' excess coverage. As excess insurer, Employers was not obliged to defend Chan in court. There is no indication that Employers affirmatively promoted National's error. Employers' actions were consistent with its position as excess insurer and do not bar its subrogation to Chan's rights.

The record demonstrates no basis upon which to disturb the decision of the circuit court. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.