**GREAT ATLANTIC INSURANCE COMPANY, Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Appellee.**

**No. 84-1064.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1984.

Decided Sept. 24, 1985.

Rehearing and Rehearing En Banc Denied Dec. 19, 1985.

Ted L. Perryman, St. Louis, Mo., for appellant.

Gerre Langton, St. Louis, Mo., for appellee.

Before BRIGHT, Senior Circuit Judge, and McMILLIAN and BOWMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Great Atlantic Insurance Co. (Great Atlantic) appeals from a final order entered in the District Court [1] for the Eastern District of Missouri granting the motion of Liberty Mutual Insurance Co. (Liberty Mutual) for judgment notwithstanding the verdict or, in the alternative, for new trial. *Great Atlantic Insurance Co. v. Liberty Mutual Insurance Co.*, 576 F.Supp. 561 (E.D.Mo. 1983). For reversal Great Atlantic argues that the district court erred in granting the motion for judgment notwithstanding the verdict or, in the alternative, for new trial. For the reasons discussed below, we affirm the judgment of the district court in favor of Liberty Mutual.

This is a diversity case involving insurance questions. Great Atlantic is a Delaware corporation; Liberty Mutual is a Massachusetts corporation. The district court applied Missouri law. As noted in the district court's memorandum opinion, this litigation arose out of a tragic explosion at a Uniroyal, Inc., plant located near Kennett, Missouri, on May 2, 1979. Two persons were killed and there was considerable property damage. Uniroyal subsequently sued American Hydrotherm Corp. in federal court, claiming that the heat transfer system, a product designed and manufactured by American Hydrotherm, was a cause of the explosion. The personal injury and property damage claims were settled for a total of $766,475.37.

Both Great Atlantic and Liberty Mutual had issued insurance policies to American Hydrotherm. Liberty Mutual, the primary insurer, paid $500,000 in settlement of the claims against American Hydrotherm and Great Atlantic, the excess insurer, paid the balance of $266,475.37. In November 1982 Great Atlantic filed this action to recover $266,475.37 from Liberty Mutual. Great Atlantic's policy provided American Hydrotherm with $500,000 excess liability coverage over the primary insurance. Great Atlantic's theory was that because Liberty Mutual had issued *two* primary insurance policies to American Hydrotherm, *each* policy providing $500,000 in product liability coverage, Liberty Mutual's *total* primary insurance coverage for the Uniroyal explosion was not $500,000, but $1 million, an amount which would have fully covered the claims against American Hydrotherm. Thus, Great Atlantic argues that it should not have paid the balance of $266,475.37 under its excess insurance policy and that it should be reimbursed by Liberty Mutual.

Liberty Mutual, however, argued that only one of the two primary insurance policies issued to American Hydrotherm (the

---

**1.** The Honorable John K. Regan, United States Senior District Judge for the Eastern District of Missouri.

KA policy) was intended to provide $500,-000 in multiperil liability coverage, including products liability, to American Hydrotherm's operations *in the United States.* Liberty Mutual argued that the other policy (the LG policy) was intended to provide similar coverage to American Hydrotherm's small *Canadian* office only but that, due to clerical errors, the LG policy did not include the territorial limitation endorsement as to coverage and thus did not accurately express the intentions of American Hydrotherm and Liberty Mutual. In April 1983, almost four years after the explosion and also several months after this lawsuit was filed, Liberty Mutual and American Hydrotherm voluntarily reformed the LG policy; Liberty Mutual, with the consent of American Hydrotherm, issued policy endorsements retroactively limiting the LG policy to American Hydrotherm's Canadian office. Thus, Liberty Mutual argues that the LG policy did not in fact provide an *additional* $500,000 in primary insurance coverage to American Hydrotherm for the Kennett, Missouri, claims and that Liberty Mutual had paid up to the $500,000 coverage limit of its applicable KA policy.

The case was tried to a jury, which heard extensive evidence about the intentions of American Hydrotherm and Liberty Mutual with respect to the scope of the LG policy coverage, and, following cross-motions for directed verdict, the jury found in favor of Great Atlantic. Liberty Mutual then filed a motion for judgment notwithstanding the verdict or, in the alternative, for new trial. The district court granted the motion for judgment notwithstanding the verdict or, in the alternative, for new trial. 576 F.Supp. at 565–66. Great Atlantic then appealed.

Despite the apparent procedural posture of this case as an appeal from an order granting a motion for judgment notwithstanding the verdict or, in the alternative, for new trial, we believe this is in fact an appeal from an order granting reformation of an insurance policy or, more precisely, one recognizing voluntary reformation.

An action to reform a written instrument in accordance with the intent of the parties was exclusively equitable, thus a claim for reformation under the Federal Rules is triable to the court. No distinction exists between reforming an instrument "as a basis of suit and reforming it for the assertion of a defense; since the need in either case arises out of the rule at law that the parties are bound by the terms of the contract as written and parol evidence to add to, alter or deny its terms is not admissible."

5 Moore's Federal Practice ¶ 38.22, at 38–185 (2d ed. 1985) (footnotes omitted), *citing City of Morgantown v. Royal Insurance Co.,* 169 F.2d 713, 714 (4th Cir.1948), *aff'd on other grounds,* 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949). *See Smith v. Bear,* 237 F.2d 79, 86 (2d Cir.1956) (extrinsic evidence may be introduced to show mutual mistake in action in equity to reform written instrument and such evidence may be interposed as defense to action at law on written agreement); *Maryland Casualty Co. v. United States,* 169 F.2d 102, 113 (8th Cir.1948); *Toucey v. New York Life Insurance Co.,* 102 F.2d 16, 21 (8th Cir.), *cert. denied,* 307 U.S. 638, 59 S.Ct. 1037, 83 L.Ed. 1519 (1939); *see generally* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2316, at 82–83 (1971) (claim that a contract or other written instrument should be reformed remains one for the court to decide). Nor are the parties entitled to a jury trial on the issue of reformation because of conflicting evidence. *See Maryland Casualty Co. v. United States,* 169 F.2d at 113.

In the present case Great Atlantic sued for damages for breach of contract; in response Liberty Mutual raised the defense of reformation. Although the issue of reformation was erroneously submitted to the jury, evidence of mistake was considered by the district court in granting judgment notwithstanding the verdict in favor of Liberty Mutual; in so doing, the district court in effect ruled that there was clear and convincing evidence of mutual mistake and granted reformation. The district court stated:

In our judgment, the evidence in this case meets all the legal requirements for a court-decreed reformation of the LG policy. Prior to the issuance of that policy the parties [insured and insurer] agreed that it would cover *only* the Canadian operations of American Hydrotherm. Unquestionably, such was their intention. Where, as here, the policy does not incorporate the true prior intention of the parties, a mutual mistake exists, entitling either party to a reformation.

576 F.Supp. at 564 (emphasis in original), *citing Schimmel Fur Co. v. American Indemnity Co.*, 440 S.W.2d 932, 938 (Mo. 1969). For this reason, we review the order of the district court under the clearly erroneous standard of review instead of the standard of review for directed verdict or for judgment notwithstanding the verdict, *see, e.g., Dace v. ACF Industries, Inc.*, 722 F.2d 374, 376 (8th Cir.1983) (court must assume all evidence supporting party opposing motion is true and in addition give that party the benefit of all reasonable inferences drawn from that evidence).

"The remedy of reformation is available to reform insurance contracts under the same principles as any other contract." *St. Louis County National Bank v. Maryland Casualty Co.*, 564 S.W.2d 920, 924 (Mo.Ct.App.1978) (citation omitted).

Reformation is an equitable remedy available to either party to a contract when the written instrument embodying their agreement does not express the true contract the parties agreed to and desired to put into writing. Equity will not impose a new contract upon the parties but will reform the instrument to accurately set forth the terms of the actual agreement. It is not necessary to show that the parties to the contract agreed upon any particular language to be used; it is sufficient to show that they agreed to accomplish a particular object by the instrument and that the instrument as executed is insufficient to effectuate their intention. Before an instrument will be reformed, the proponent of the reformation has the burden of prov-

ing by clear and convincing evidence that a mistake mutual and common to both parties has been made. It must be clear that the instrument has done what neither party intended. If such a mistake is shown it is irrelevant whether it is a mistake of law or fact or merely a scrivener's error; all may be rectified in equity.

*Id.* (citations omitted); *see generally* 13A J. Appleman, Insurance Law and Practice §§ 7607–7619 (1976); 17 Couch on Insurance 2d § 66 (M. Rhodes rev. ed. 1983). "[T]he general rule is that reformation relates back to the date of the reformed instrument as to the parties thereto." *L.E. Myers Co. v. Harbor Insurance Co.*, 67 Ill.App.3d 496, 24 Ill.Dec. 182, 186, 384 N.E.2d 1340, 1344 (1978) (parenthetical citations omitted), *aff'd*, 77 Ill.2d 4, 31 Ill.Dec. 823, 394 N.E.2d 1200 (1979). "There is also apparent agreement that in a proper case for reformation, the parties [to the instrument] may do voluntarily what a court of equity would have compelled them to do, and with the same effect." *Id.* (footnote omitted), *citing Coakley v. State*, 20 Misc.2d 831, 196 N.Y.S.2d 793 (Ct.Cl.1960), *Feltham v. Blunck*, 34 Idaho 1, 198 P. 763 (1921), *and Hutchinson v. Chicago & North West Ry.*, 41 Wis. 541 (1877).

After carefully examining the record, we hold the district court's decision to grant reformation of the LG policy, or, more precisely, to recognize the prior voluntary reformation, is supported by substantial evidence. The record contains clear and convincing evidence establishing that there was an agreement between Liberty Mutual and American Hydrotherm about the territorial scope of the coverage provided under the LG policy, the LG policy was intended to contain the terms of that agreement, and there was a material variance between the mutual intention of the parties to the agreement and the LG policy. *E.g., American Employers Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 594 F.2d 973, 977 (4th Cir.1979) (elements necessary for reformation). As noted by the district court, in addition to the testimo-

ny of employees of Liberty Mutual and American Hydrotherm about the intentions of the parties to the LG policy,[2] the limited territorial scope of the coverage which the parties intended to provide under the LG policy is consistent with the difference in

the amount of premium charged for the liablity coverage of $500,000 in each policy. The advance premium for the KA policy liability coverage was almost $30,000 as compared to the $251 premium for the LG policy coverage.... Liberty Mutual would [not], absent a mistake, provide identical $500,000 coverage in two policies issued at the same time to the same assured for premiums so grossly disparate.

576 F.Supp. at 563.

■ Great Atlantic, however, argues that Liberty Mutual and American Hydrotherm cannot voluntarily reform the LG policy retroactively, that is, to limit or exclude coverage to its detriment. We disagree.

The question of whether reformation should be permitted to relate back against the intervening rights of third persons was thoroughly discussed in the *L.E. Myers Co. v. Harbor Insurance Co.* case, which involved a fact pattern similar to that in the present case. In *L.E. Myers Co. v. Harbor Insurance Co.*, 24 Ill.Dec. at 183–84, 384 N.E.2d at 1341–42, the insured, an electrical transmission line construction contractor, had arranged to obtain a primary insurance policy in the amount of $100,000 from the Continental Insurance Co. (Continental) and an excess insurance "umbrella liability" policy in the amount of $1 million from Harbor. Under an "umbrella liability" policy the excess insurer provides the same coverage as the underlying primary insurer. The contractor erected electrical transmission towers and lines for a utility company and then, at a time within the period covered by the policies, a windstorm toppled a section of towers and lines. The utility company filed an action against the contractor seeking $10 million in damages.

The contractor notified its insurers of the utility company's lawsuit. Harbor acknowledged its umbrella liability coverage up to the excess of its policy over the primary policy, but later, after reviewing a copy of the Continental policy for the first time, denied liability because the Continental policy included an endorsement that excluded liability for property damage to work performed by the insured. According to the contractor and the insurance broker, the exclusion in the Continental policy was supposed to have been limited to a certain other job and the unrestricted exclusion was a mistake. Continental acknowledged that a mistake had been made, agreed to reform the policy to reflect the parties' true agreement and issued an endorsement. The parties' voluntary reformation occurred after the loss and after the contractor's submission of its claim and notice of the utility company's lawsuit to Harbor.

Following a comprehensive review of the availability of reformation as against third persons, the court upheld the parties' voluntary reformation of the primary insurance policy, noting that

reformation has been permitted against the intervening rights of third persons such as sureties, assignees for the benefit of creditors, and general or judgment creditors. More particularly, in cases involving insurance policies, reformation has been permitted although it would extinguish the accrued rights of beneficiaries or would adversely affect the rights of third party claimants by reducing the insurance proceeds fund from which they might eventually recover.

Reformation has also been permitted where to hold otherwise would permit a third person who had not relied on the erroneously expressed agreement to be "the gratuitous beneficiary" of the parties' mutual mistake. *Coakley v. State*, 20 Misc.2d 831, 196 N.Y.S.2d 793, 796 (parties permitted to voluntarily reform a release erroneously expressed in general

---

**2.** There is evidence in the record (March 1980 interoffice memorandum, March 1982 telex) that Liberty Mutual was less than candid in replying to requests made by Great Atlantic for information about the territorial limits of the KA and LG policies.

terms, though rights of inadvertently released state, against which action was pending, would be adversely affected); *Utica Mutual Ins. Co. v. Monarch Ins. Co. of Ohio* (1967), 250 Cal.App.2d 538, 58 Cal.Rptr. 639 (insured and one insurance company permitted to voluntarily reform policy to eliminate coverage as against another insurer over its claim that its rights had intervened); *see also Burlingham v. Hanrahan* (S.Ct.1931), 140 Misc. 512, 251 N.Y.S. 55 (reformation of building restriction agreement permitted as against adjoining lot owners who did not purchase in reliance on erroneously expressed instrument).

Thus, a more precise statement of the rule would seem to be that reformation will generally be granted, and will relate back, "[e]xcept as to bona fide purchasers without notice and those standing in similar relations," such as mortgagees or any "subsequent encumbrancers or lienholders for a present consideration."

A further qualification supported by the cases is that reformation should not be granted or be permitted to relate back where it would somehow be against the public interest to do so. The chief application of this doctrine has been in cases holding that the Internal Revenue Service is not bound by reformations of trust conveyances after tax obligations have been determined.

*Id.* 24 Ill.Dec. at 187–88, 384 N.E.2d at 1345–46 (other citations and parentheticals omitted); *accord American Employers Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 594 F.2d at 978; *Truck Insurance Exchange v. Wilshire Insurance Co.*, 8 Cal.App.3d 553, 87 Cal.Rptr. 604, 608 (1970).

Applying these principles to the present case, Great Atlantic cannot be said to be a bona fide purchaser or similarly situated party or to have detrimentally relied upon the erroneously expressed LG policy. As noted by the district court,

[t]here is not a scintilla of evidence (nor even a contention) that Great Atlantic issued its $500,000 excess liability policy in the belief that Liberty Mutual's primary coverage was other than $500,000. [Great Atlantic's excess liability] policy, negotiated by the JLS Group as agents for American Hydrotherm, demonstrates the contrary. Therein, the primary insurance policy was described as bearing the KA number, and the primary insurance limits were set forth at $500,000, at a time when the JLS Group had knowledge of the existence of both the KA and LG policies. And it is significant that the Great Atlantic policy specifically states that the *total* limits of liability (that is, the combination of the primary and the excess coverage) is $1,000,000.

576 F.Supp. at 563–64 (emphasis in original). In addition, while Liberty Mutual may not have shown the candor that one would have expected under the circumstances, *see* note 2 *supra*, there is no suggestion that American Hydrotherm and Liberty Mutual acted fraudulently or collusively to harm Great Atlantic.

Accordingly, we affirm the judgment of the district court in favor of Liberty Mutual. In view of our disposition it is unnecessary to review the order conditionally granting new trial.

BRIGHT, Senior Circuit Judge, dissenting.

I dissent.

Liberty Mutual's defense in this action was not one of mutual mistake with a request for court-ordered reformation. If that situation had existed, the decision to grant reformation would properly lie with the court. *See* 5 Moore's Federal Practice ¶ 38.22 at 38–185 (2d ed. 1985). Liberty Mutual never sought the court's aid in reforming the LG policy, however. It and its insured, American Hydrotherm, altered the policy themselves after the Kennet explosion triggered liability under the policy as originally drawn. At trial, Liberty Mutual asserted that the altered policy reflected the parties' true intent and must be enforced. The court and jury thus faced the question of which of two policies applied, that represented by the original LG policy,

as Great Atlantic maintained, or that represented by the "reformed" policy, as Liberty Mutual maintained. The determinative issue, therefore, was solely that of Liberty Mutual's and American Hydrotherm's intent when they entered the insurance contract and was properly for the jury as fact finder. *See Collins v. Swope,* 605 S.W.2d 538, 540 (Mo.App.1980) ("The trier of facts, be it the court or jury, usually decides the question of intention.")

Moreover, even if Liberty Mutual's defense is termed "equitable," this court should be reluctant to transform the defense into one tried by the district court when all parties and the court agreed to submit it to the jury. Traditionally equitable cases are often tried to juries. This court has observed that "the historic distinction between law and equity, although still the standard for determining when a jury trial is constitutionally required, is no longer the only factor in determining if a trial by jury will be granted in 'equity' cases." *Turner v. Burlington Northern Railroad Co.,* 771 F.2d 341 (8th Cir.1985) (citing *Ross v. Bernhard,* 396 U.S. 531, 538–39, 90 S.Ct. 733, 738–39, 24 L.Ed.2d 729 (1970); *Fitzgerald v. United States Lines Co.,* 374 U.S. 16, 21, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963); *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 477–78, 82 S.Ct. 894, 899–900, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 504–05, 79 S.Ct. 948, 953–54, 3 L.Ed.2d 988 (1959)). Liberty Mutual never requested that the trial court evoke its equity jurisdiction, but was content to proceed in front of a jury. Even on appeal, it urges only that this court review the trial court's ruling under the standard of review for judgments notwithstanding the verdict. Further, the trial court never attempted to exercise its equity jurisdiction, granting a judgment notwithstanding the verdict rather than treating the jury's findings as advisory and substituting its own. By restyling the defense as one tried to the court, the majority unilaterally deprives the district court of its power to send "equitable" defenses to the jury when the party asserting the defense consents. More seriously,

however, it encourages parties to seek independent court review of equitable defenses after adverse jury decisions to which they initially agreed to be bound. We should discourage, rather than encourage, such attempts to take a "second bite of the apple."

Whether equitable or legal, therefore, Liberty Mutual's defense was properly tried before the jury. The jury heard extensive evidence and rejected the after-the-fact collaborative alteration of the LG policy as reflecting the parties' original intent. Under Missouri law, the alteration was thus irrelevant and the LG policy as issued controlled. *See Pennsylvania Casualty Co. v. Phoenix,* 139 F.2d 823 (10th Cir.1944) (construing Missouri law); *Hocken v. Allstate Ins. Co.,* 235 Mo.App. 991, 147 S.W.2d 182, 187 (1941). The district court was only justified in granting a judgment notwithstanding the verdict if no evidence supported the view that the LG policy as issued expressed the original intentions of Liberty Mutual and American Hydrotherm. *See Coleman v. Burlington Northern, Inc.,* 681 F.2d 542, 545 (8th Cir.1982). The very existence of the LG policy, however, was evidence of the parties' intent at contracting. The district court therefore erred in granting the motion for judgment notwithstanding the verdict.

The district court alternatively granted Liberty Mutual a new trial on the grounds that the jury verdict for Great Atlantic was against the overwhelming weight of the evidence and that the charge to the jury was prejudicially misleading. In my view, the trial court did not err in its alternative ruling. I would therefore reverse the district court's ruling granting the motion for judgment notwithstanding the verdict and affirm on the alternative ruling for a new trial.